(39 Misc. Rep. 113.)

PEOPLE ex rel. CLARK v. WARDEN OF SING SING PRISON.

(Supreme Court, Special Term, Westchester County. October, 1902.)

1. CRIMINAL LAW—INDETERMINATE SENTENCES—CONSTITUTIONAL LAW.
    Pen. Code, § 687a, making it incumbent on the trial judge to impose
    an indeterminate sentence upon a defendant never before convicted of
    a crime punishable by imprisonment in the state's prison, is not in
    violation of the constitution, as interfering with the governor's pardon-
    ing powers; the act itself providing that nothing therein shall be con-
    strued to impair the power of the governor to grant a pardon or com-
    mutation of sentence.

2. SAME—UNCERTAINTY.
    A sentence under Pen. Code, § 687a, providing for indeterminate sen-
    tences, is not void for the uncertainty of the duration of the term, as
    the sentence is a definite one, for the maximum duration of such
    term.

3. SAME.
    Laws 1889, c. 382, as amended, permitting a prisoner under an inde-
    terminate sentence to be pardoned by a board of commissioners of
    paroled prisoners, is constitutional.

4. CONSTITUTIONALITY OF STATUTE.
    The special term will not declare a statute unconstitutional unless it
    is clearly so.

Application by the people, on the relation of Charles H. Clark, for writ of habeas corpus against the warden of Sing Sing prison. Application denied.

The relator pleaded guilty of the crime of assault in the second degree. He was thereupon sentenced to an indeterminate sentence of "not less than one year, nor more than five years," in the state prison at Sing Sing. This sentence was imposed in conformity with the first sentence of section 687a of the Penal Code, which was enacted by Laws 1901, c. 425, which took effect September 1, 1901. The second sentence of section 687a was enacted by Laws 1902, c. 282, and did not take effect until about three weeks after the sentence of this relator. Pen. Code, § 687a, does not provide the means whereby a convict imprisoned under an indeterminate sentence may secure parole or discharge. Statutory provisions for the indeterminate sentence of persons to houses of refuge, and to the Elmira reformatory and other reformatory institutions, had been in existence for many years. In 1889 the various provisions of the Revised Statutes (part 5, c. 3, tit. 2), together with the many acts amendatory thereof, were codified and re-enacted as the state prison law (Laws 1889, c. 382). By section 74 of the state prison law of 1889, it was provided that, whenever any male person over 16 years of age was convicted of a felony punishable by imprisonment in a state prison for a term to be fixed within certain limits, the court, "instead of pronouncing upon such offender a definite sentence of imprisonment, * * * may pronounce * * * an indeterminate sentence * * * with minimum and maximum limits only specified." Sections 75, 76, 77, 78, 79, 80, 81, 82, and 83 thereupon created a board of commissioners "of paroled prisoners"; gave this board jurisdiction to entertain applications for parole or discharge; authorized them to admit prisoners to parole, or to grant them absolute discharge; and vested in them power to retake prisoners who had violated the terms of their parole. Thereafter sections 74, 75, and 76 of the state prison law were amended by Laws 1901, c. 260. By this act of 1901 the possibility of obtaining a parole or absolute discharge was extended to certain therein described felons, who had been sentenced for definite terms. The new statute arbitrarily created minimum and maximum limits, and provided that they might apply for parole or discharge after the expiration of the newly created minimum term. In 1901 a new section (687a) was added to the Penal Code by Laws 1901, c. 425, taking

effect September 1, 1901. This new section made it incumbent upon the trial judge to impose an indeterminate sentence upon a defendant "never before convicted of a crime punishable by imprisonment in the state prison, who is convicted in any court in this state of a felony, the maximum penalty for which, exclusive of fines, is imprisonment for five years or less."

Charles A. Watson, for relator.
Robert C. Taylor, Asst. Dist. Atty., opposed.

KEOGH, J. The defendant was convicted of assault in the second degree, and sentenced to imprisonment in the state prison for the term of not less than one nor more than five years. This sentence was imposed in compliance with the amendment of the Penal Code which directs that:

"A person never before convicted of a crime punishable by imprisonment in the state prison, who is convicted of a felony, the maximum penalty for which, exclusive of fines, is imprisonment for five years or less, and sentenced to a state prison, shall be sentenced thereto under an indeterminate sentence, the minimum of which shall not be less than one year, or in case a minimum is fixed by law, not less than such minimum, and the maximum of which shall not be more than the longest period fixed by law for the punishment of the crime of which the offender is convicted."

The defendant seeks a release on the ground that this law providing for an indeterminate sentence is unconstitutional. The objections to the law may be classified as follows: First, that the release is a judicial power, and that a statute which permits a release or parole to be granted by administrative officers is unconstitutional; second, that the power to release conferred on the prison officials infringes the governor's constitutional pardoning power; third, that the sentence is void for uncertainty.

The constitution has committed to the legislature the power to define crime, and, within definite limits, to regulate its punishment. The legislature has frequently enacted that certain crimes must be punished by the offender's imprisonment for a definite and arbitrary term of years, irrespective of any palliating circumstances, and leaving no discretion to the court. It has also and in many cases provided that the commission of certain other crimes may be punished by the offender's imprisonment for not less than a certain term of years, nor more than another definite term of years, and in this way the criminal law has been enacted and administered in this state for many years. The legislature has always treated as within its exclusive province the power to define crime and to prescribe its punishment. The law which we are considering, instead of giving the court discretion to terminate the prisoner's imprisonment before the expiration of the maximum period prescribed by law, confers upon the prison officials constituting a prison board the power to do so when in their judgment the prisoner's good conduct and reformation merits such a reward. The legislature has in this way exercised its exclusive control over the punishment of crime by conferring upon prison officials powers which it heretofore conferred upon or withheld from the courts at pleasure. The objection that the statute interferes with the governor's pardoning power is answered by the provisions of the law itself (section 83), which declares that "nothing

herein contained shall be construed to impair the power of the governor of the state to grant a pardon or commutation of sentence." As long as the offender remains in prison the governor's power to pardon him is absolute. If he is released by the operation of this law, it is a favor of which the offender cannot complain. In addition to all this, for many years, under the laws of this state creating and regulating the state reformatories, indeterminate commitments of women and children have been made; many having been committed during minority, and others for a definite term, subject to be reduced by good behavior and reformation. The right of the legislature to enact such laws, and of the prison officials to apply them as occasion arose, has, in effect, been established by the acquiescence of the bar and community for a long period of time. It is difficult to find a good reason for asserting that the exercise of a legislative power which has been accepted as constitutional when applied to minors should be treated as a violation of the constitution when applied to adults. A statute similar to ours has been in force in many of the sister states, and its constitutionality upheld by the courts. It is useless to string out here extracts from opinions given in such cases. The volumes which contain them are open and easy of access to the profession. It is sufficient to refer to them in a footnote to this statement.

The objection that the law makes the duration of the sentence uncertain is untenable, because the sentence imposed under the statute must be regarded as a definite sentence for its maximum term. There is little doubt but that the present system is better than the one which it supplanted. The prison officials whose duty it is to observe the daily life, study the character and traits, and investigate the life record, of the prisoner, can far more correctly and intelligently decide when a prisoner may be released with advantage to the community, than can the judge, who knows nothing of the accused except what is revealed by the testimony on his trial. The study made by intelligent men into the working of laws similar to the one under consideration has shown that very many adult convicts, especially first offenders, who have been released under its provisions, have permanently reformed, and have become useful members of society. Before the court at special term should declare this law invalid, its unconstitutionality should appear beyond question.

The application for the prisoner's discharge is denied. State v. Peters, 43 Ohio St. 629, 4 N. E. 81; 81 Ohio Laws, pp. 72–76, § 5, quoted at page 644, 43 Ohio St., and page 83, 4 N. E.; People v. State Reformatory, 148 Ill. 413, 36 N. E. 76, 23 L. R. A. 139; George v. People, 167 Ill. 447, 47 N. E. 741; Miller v. State, 149 Ind. 607, 49 N. E. 894, 40 L. R. A. 109; Com. v. Brown, 167 Mass. 144, 45 N. E. 1; Murphy v. Com., 172 Mass. 264, 52 N. E. 505, 43 L. R. A. 154, 70 Am. St. Rep. 266; Oliver v. Oliver, 169 Mass. 592, 48 N. E. 843.

Application denied.