## SUPREME COURT — ALBANY SPECIAL TERM.

### January, 1924.

## THE PEOPLE EX REL. GEORGE. HAUPT v. FRANK LASCH.

### (122 Misc. 223.)

HABEAS CORPUS—WHEN INDETERMINATE SENTENCE TO STATE REFORMATORY ON CONVICTION OF CRIME OF GRAND LARCENY, SECOND DEGREE, DEEMED DEFINITE SENTENCE FOR FIVE YEARS—PRISON LAW, SECTION 307—RELATOR GRANTED PAROL AFTER CONFINEMENT SUBJECT TO CERTAIN CONDITIONS— SUPERINTENDENT OF REFORMATORY SUBSEQUENTLY ISSUED WARRANT FOR RELATOR'S ARREST PURSUANT TO PRISON LAW, SECTION 301, PREDICATED ON LATTER'S ARREST FOR MURDER—TRAVERSE TO RETURN OF WRIT CONTAINED ONLY UNVERIFIED STATEMENT OF RELATOR'S ATTORNEY—WHEN TRAVERSE DEEMED NOT TO PUT IN ISSUE EXISTENCE OR NON-EXISTENCE OF REASONABLE CAUSE TO BELIEVE RELATOR VIOLATED PAROLE—WHEN ORDER WILL ISSUE DISMISSING WRIT AND REMANDING RELATOR FOR RECONFINEMENT.

An indeterminate sentence to the Elmira Reformatory imposed upon relator upon his conviction of the crime of grand larceny, second degree, the maximum sentence for which is five years, was under section 307 of the Prison Law a definite sentence for five years.

After relator had been confined under such a sentence for a little more than a year the managers of the reformatory granted to him a parole, subject to conditions therein contained, and also to certain oral conditions, and also to certain oral conditions given by the superintendent of the institution and its record clerk, which among other things required relator during the period of his parole to be a law-abiding citizen, to abstain from intoxicating drink, to avoid low and evil associations, to conduct himself honestly and properly in all his relations with his employer, relatives, the public and the entire community in which he was paroled. Nearly two years after the parole had been granted the superintendent of the reformatory immediately upon learning that relator had been arrested issued a warrant containing a statement of the jurisdictional facts necessary to its issuance, as provided by section 301 of the Prison Law. Thereafter the superintendent learned that a verdict of not guilty had been rendered upon the trial of an indictment charging relator with the crime of murder in the first degree, in killing a State trooper, and that relator had

testified on said trial that he was present at the time of the actual killing of the State trooper, and in a drunken stupor; and the superintendent also learned that the relator's companions on that occasion were of low and evil repute. The only traverse to the return to a writ of habeas corpus to inquire into the legality of the detention of the relator under the warrant issued by the authorities of the reformatory was the unverified statement of his attorney which while alleging that the warrant was not sufficient in that it failed to state the cause or causes for the issuance thereof, d'd not allege that the warrant was issued without reasonable cause to believe that the relator had violated his parole. *Held*, that the traverse did not put in issue the existence or non-existence of a reasonable cause to believe the relator had violated his parole; the statement in the return to the writ, that the authorit'es of the reformatory had such reasonable cause of belief, was in the first instance to be taken as presumptively true, and no issue having been raised *dehors* the record as to the fact, the presumption of jurisdiction and regularity justified the detention of the relator under said warrant and an order will be entered dismissing the writ and remanding the relator in due course of procedure.

HABEAS CORPUS proceeding.

*Earle J. Wiley (John B. Smith, of counsel), for relator.*

*Charles J. Herrick, District Attorney, and Carl Sherman, Attorney-General (William J. Cahill, Deputy Attorney-General, of counsel), for defendant.*

STALEY, J.:.

On October 22, 1920, the relator pleaded guilty to the crime of grand larceny, second degree, and was sentenced by the county judge of Albany county to the Elmira Reformatory to be there confined under the provisions of law.

On December 20, 1921, the relator was granted a conditional parole by the managers of the reformatory, by virtue of the authority conferred on them by law, which parole was subject to certain conditions contained in the parole delivered to the relator and also to certain oral conditions given by the superintendent on one occasion and by the record clerk on another prior to his release.

These conditions, among other things, required the relator during the period of his parole to be a law-abiding citizen, to abstain from intoxicating drink, to avoid low and evil associations, to conduct himself honestly and properly in all his relations with his employer, relatives, the public and the entire community in which he was paroled.

On or about October 13, 1923, the superintendent of the reformatory learned that the relator had been arrested and the warrant under which he is now held was immediately issued, and the relator apprehended thereunder on November 30, 1923.

It further appears, although not germane in point of time as a cause for the issuance of the warrant involved in this proceeding, that the superintendent subsequently learned that the relator had been indicted and tried for murder in the first degree for the killing of a State trooper, and that upon this trial, in which a verdict of not guilty was rendered, he testified that he was present and in a drunken stupor at the time of the actual killing, and also learned that the relator's companions on this occasion were of low and evil repute.

The Prison Law contains the following provisions in relation to the parole and retaking of paroled prisoners at reformatories:

" Section 300.    Parole of prisoners at reformatories.—The State board of managers may allow any prisoner confined in either of said reformatories to go upon parole outside of the reformatory buildings and inclosures, pursuant to the rules of the board of managers. *A person so paroled shall remain in the legal custody and under the control of the board, until his absolute discharge,* as provided by law. No personal appearances before the board shall be permitted in behalf of the parole or discharge of any prisoner.

" Section 301.    Retaking of paroled prisoners of reformatories.—If *the State board of managers has reasonable cause to believe that a paroled prisoner has violated the conditions of his parole, the board may issue its warrant certified by its*

*secretary, for the retaking of such prisoner at any time prior to his absolute discharge.* The time within which the prisoner must be retaken shall be specified in the warrant. Such warrant may be issued to an officer of the reformatory or to any peace officer of the State, who shall execute the same by taking such prisoner into custody within the time specified in the warrant. Thereupon such officer shall return such prisoner to the reformatory, where he may be retained for the remainder of the maximum term provided by law.　 *　*　*

" Section 304. Absolute release from imprisonment from reformatory; discharge.—When it appears to the State board of managers that there is strong or reasonable probability that any prisoner will remain at liberty without violating the law, and that his release is not incompatible with the welfare of society, they shall issue to such prioner an absolute release or discharge from imprisonment. Nothing herein contained shall be construed to impair the power of the governor to grant a pardon or commutation in any case."

The relator having been committed to the reformatory under an indeterminate sentence, the maximum for the crime of grand larceny, second degree, being five years, the sentence is a dfinite one for the maximum term (Prison Law, § 307; People ex rel. Clark v. Warden of Sing Sing Prison, 39 Misc. Rep. 113) which has not expired.

It is the contention of the relator here that he is not detained by the chief of police by virtue of the original commitment to the reformatory, but by virtue of a warrant issued by the board of managers under the authority conferred by section 301 of the Prison Law, and that the jurisidiction to issue such a warrant is predicated upon a belief, supported by reasonable cause therefor, that the relator has violated the conditions of his parole and that the warrant is insufficient in law, in that it fails to state the cause or causes why such warrant was issued or in what manner and by what acts the said relator has violated his parole.

9

The district attorney contends that where there has been no absolute discharge, and that the maximum term of imprisonment has not expired, and the prisoner has merely been admitted to a temporary or conditional parole, which the board of managers can revoke if they have sufficient ground, the court cannot inquire into the sufficiency of those grounds or the existence thereof in a habeas corpus proceeding, and that it is not necessary that the grounds be set out in the warrant.

The apparent purpose of the statutes regulating confinement in the reformatory institutions of the State is to impose punishment for crime and at the same time to effect reformation of their inmates and to equip them for lives of usefulness and to become law abiding citizens.

The term of imprisonment of any person sentenced to a reformatory shall be terminated by the State board of managers, but such imprisonment shall not exceed the maximum term for the crime for which the prisoner was convicted. Prison Law, § 307.

The board of managers are required to adopt a uniform system of marks and credits to be earned by each prisoner as a condition of increased privileges or of release from their control. Each prisoner shall be credited for good personal demeanor, diligence in labor and study and for results accomplished, and be charged for dereliction, negligence and offenses. Prison Law, § 303.

The legislature animated no doubt by a desire to make humane provision in the case of offenders between the ages of sixteen and thirty who are imprisoned for a first offense, and to encourage them to reform without suffering a period of imprisonment of such duration that they might abandon hope of opportunity to regain a standing in the community, conferred the power upon the board of managers to grant conditional paroles which permit prisoners to go outside of the reformatory buildings. A person so paroled, however, remains in the legal custody and under the control of the board, until

his absolute discharge, which may be granted by the State board, when it appears to it that there is strong or reasonable probability that any prisoner will remain at liberty without violating the law.

The relator at the time of the issuance of the warrant by the reformatory authorities and of its execution by the chief of police was outside the reformatory buildings on a conditional parole and was, therefore, at that time in the legal custody and under the control of the board, subject to the power of the State board to grant an absolute release, and subject to the power of the board of managers of the reformatory under the statute to revoke and reconfine him as a paroled prisoner.

A writ of habeas corpus was issued on November 30, 1923, to inquire into the legality of the detention of the relator under the warrant issued by the reformatory authorities.

The return to this writ sets forth the original commitment and the warrant of the reformatory authorities, which upon its face contains the statement that the reformatory authorities have reasonable cause to believe that the relator has violated the conditions of his parole, therefore making it necessary that he shall be returned to the reformatory. A statement of the jurisdictional facts necessary for the issuance of the warrant by the board of managers provided by section 301 of the Prison Law is, therefore, set forth in the warrant under which the relator is now held.

A prisoner produced upon the return of a writ of habeas corpus, under oath may deny any material allegations of the return or make any allegations of act showing either that his imprisonment or detention is unlawful or that he is entitled to his discharge. Civ. Prac. Act, § 1259.

The traverse or answer to the return of the writ is not made by the prisoner under oath, but by the unverified statement of his attorney. It does not contain an allegation that the warrant was issued by the reformatory authorities without reasonable cause to believe that the relator had violated his

parole, but alleges that the warrant is not sufficient, in that it fails to state the cause or causes therefor. The existence or non-existence of a reasonable cause to believe that the relator had violated his parole is not put in issue by any allegations of the answer to the return. The statement in the return is, therefore, to be taken as presumptively true in the first instance and no issue is raised *dehors* the record as to this fact. This presumption as to jurisdiction and regularity is good and justifies detention under the warrant until it is removed by proof which overcomes it. No proof is offered to remove it and no issue raised under which such proof may be presented. People ex rel. Corkran v. Hyatt, 172 N. Y. 176, 194-202.

While it is not, therefore, necessary to determine the question whether the reformatory authorities had reasonable cause under the statute to confer the right to issue the warrant, it may be said that it further appears that the superintendent of the reformatory knew that the relator had been arrested for a crime prior to its issuance. While a mere arrest is not evidence under the law of guilt, I believe, if necessary to consider the question of the existence of a reasonable cause, that it may well be regarded that his arrest may be such a cause to believe that the paroled prisoner has violated the conditions of his parole and is not conducting himself in the manner required by the reformatory authorities—a conclusion fully sustained in this case by the sworn statement of the relator in his testimony upon the murder trial.

Order may be entered dismissing the writ and remanding the relator to the custody of the chief of police of the city of Albany for reconfinement in the State Reformatory at Elmira.

Ordered accordingly.