## MORGAN v. ADERHOLD, Warden.

### No. 7311.

Circuit Court of Appeals, Fifth Circuit.
Oct. 23, 1934.

172

Harlen O. Morgan, of Atlanta, Ga., in pro. per.

Lawrence S. Camp, U. S. Atty., and H. T. Nichols, Sp. Atty., both of Atlanta, Ga., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

*SIBLEY, Circuit Judge.*

On a hearing of his writ of habeas corpus Harlen O. Morgan was remanded to the penitentiary and appeals. The facts are not clear in the record, but we understand that Morgan was sentenced January 10, 1929, to two years' imprisonment for conspiracy to violate the Dyer Act, and also to four years' imprisonment to commence thereafter for substantive offenses against that act (18 USCA § 408); that after he had served with a clear record for more than two years he was removed to a prison camp where he worked fifteen months with a clear record under promise of additional good time allowance of five days per month; that he was then paroled and later his parole was revoked and he was returned to the penitentiary with all good time allowances withdrawn to serve the remainder of the original four year sentence. He claims in his brief that the revocation of his parole was by one member of the Parole Board rather than by the Board, but no such thing is shown in the record. The questions there raised are: Does revocation of the parole annul the good time earned on his first sentence which was fully served before he was paroled? Does it prevent earning good time on the balance of the second sentence? Is the additional good time earned at the prison camp between May, 1930, and August, 1931, forfeited?

If all good-time deductions claimed are to be allowed, it fairly appears that Morgan should be discharged. That the deduction provided by 18 USCA § 710 is prevented by a revocation of parole both in respect of good conduct before parole and after its revocation unless restored by the Attorney General under section 711 is fairly ruled in Aderhold v. Perry (C. C. A.) 59 F.(2d) 379, 380. We there held that when a prisoner was received into the penitentiary under several successive sentences, while for most purposes his sentences remain distinct, yet for the single purpose of good time deduction they are to be treated as one, the aggregation of them required by statute serving to increase the rate of the allowance and also to increase what is lost by misconduct, so that good conduct does not earn a final and absolute credit as to any sentence until the entire service is, with the aid of the credit, performed. Good conduct for a month or for the term of one of the sentences gives only a potential credit, an inchoate right to it, which is perfected only when at the time for casting up the account the prisoner's "record of conduct," to quote the statute, "shows that he has faithfully observed all the rules and has not been subjected to punishment." This refers to his whole record during the aggregated sentences under which he originally entered the penitentiary. Touching misconduct on parole, by the words of section 716 the prisoner is "to remain, while on parole, in the legal custody and under the control of the warden of such prison from which paroled," and the conditions of his parole become rules which he is under duty to observe although not actually within the walls of the penitentiary. See Anderson v. Corall, 263 U. S. at page 196, 44 S. Ct. 43, 68 L. Ed. 247. Section 719 in plain words declares that: "If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced." The loss of this time is a punishment for a failure faithfully to observe the rules within the meaning of section 710, which prevents the deduction as for a good record. See, also, Halligan v. Marcil (C. C. A.) 208 F. 403; Ex parte Marcil (D. C.) 213 F. 990. It is argued that the final section of the Parole Act, 18 USCA § 723, which provides that nothing in the act shall be construed "to impair the power of the President * *. * to grant a pardon or commutation, * * * or in any way impair or revoke such good time allowance as is or may hereafter be provided by law," prohibits the forfeiture of good time by anything done under the parole law. We are of opinion that the language means only that pardon by the President and the plan of

good time allowances are not superseded by the parole. Good time credits are still to be allowed even while a prisoner is out on parole. See section 716. But they are not given any new stability or security, nor to be earned except in accordance with section 710. This construction of the statute has been administratively acted on for twenty years, since Halligan v. Marcil, supra, was decided, and Congress in its subsequent considerations of the subject has not altered it.

■ As to the additional allowance claimed for service in the prison camp, reliance is placed on a dictum in Perry's Case, as follows: "Under the Act approved May 27, 1930, § 8, 46 Stat. 391 (18 USCA § 744h), the Attorney General has established a system of good time allowance in prison camps as a periodic reward for faithful, diligent, and willing service which is not automatically defeated by subsequent misconduct. With this interesting experiment in penology we are not concerned in this case." The reference was to Circular No. 2175, issued by the Attorney General on April 10, 1931, whereby an allowance because of such service, rather than because of freedom from rule violation as under section 710, was provided, somewhat in the nature of a wage. This new allowance was to be affirmatively set up at the end of each month by the Director. Paragraph 6 stated: "Camp good time once earned cannot be revoked except on approval of the Director of the Bureau of Prisons." Perhaps the quoted provision was in conflict with the Act of 1930 (18 USCA § 744h) which authorizes the Attorney General to establish the additional allowance only "under the same terms and conditions as provided in the Acts of Congress referred to in this section," being sections 710 to 712a of the Code. Perhaps it amounts only to making the Director instead of the local camp superintendent the judge of misconduct. The record before us does not disclose under what regulations the additional deduction is claimed by Morgan, nor by whom it was revoked. Most of his service was prior to April 10, 1931. There is no showing that any deduction was ever affirmatively allowed him, nor that if now respected it would be sufficient to entitle the prisoner to a present discharge. We are unable to say that error is shown on this point in the judgment remanding him to custody.

■ The contention that the sentence for conspiracy in which overt acts of transporting stolen cars were set up protects Morgan from sentence for committing the substantive offenses which the conspiracy contemplated is foreclosed by the decisions in United States v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211; Powers v. United States (C. C. A.) 294 F. 512; Perry v. United States (C. C. A.) 18 F.(2d) 477.

■ In the conspiracy indictment, in the charging clause, the defendant is named as Helen O. Morgan, though he is named Harlen O. Morgan in portions detailing the overt acts. Helen and Harlen are hardly idem sonans; so that a misnomer appears which might have been pleaded, for an accused person has the right to have the record show his proper name. But not pleading the misnomer waives it. The arrest and arraignment of the accused identifies him for trial, and the person so arrested and arraigned is validly convicted no matter what name is applied to him in the proceedings.

No error appearing, the judgment of remand is affirmed.