## HENRATTY v. ZERBST, Warden.
### No. 366–H. C.

District Court, D. Kansas.
Dec. 22, 1934.

Wm. L. Vandeventer, of Springfield, Mo. (Calvin, Vandeventer & Kimbrell, of Kansas City, Mo., on the brief), for petitioner.

D. C. Hill, Asst. U. S. Atty., of Wamego, Kan. (S. S. Alexander, U. S. Atty., of Topeka, Kan., on the brief), for respondent.

McDERMOTT, Circuit Judge (Assigned).

The respondent has filed a motion to dismiss an amended petition for a writ of habeas corpus, on the ground that the amended petition does not state facts sufficient to entitle the petitioner to the writ. The facts alleged may be summarized as follows:

The petitioner was sentenced on December 20, 1924, to serve five years' imprisonment on each of two convictions, the sentences to run consecutively. Petitioner began serv-

ing his sentence on December 28, 1924, and on April 24, 1930, he was paroled by the proper authorities. The parole order contained the usual conditions and also the condition that petitioner was to remain within the bounds of the state of Missouri "until September 14, 1931, or until other action may be taken by the said Board of Parole." On September 24, 1931, petitioner received from the Supervisor of Paroles a letter saying that his final parole report had been received and had been found satisfactory and since "it appears that you have complied with the conditions under which you were released, you are hereby discharged from parole." On August 10, 1933, a member of the Board of Parole, under authority of 18 USCA § 717, issued a warrant for the petitioner's apprehension and on April 12, 1934, he was arrested and returned to the penitentiary. On the same day, petitioner's parole was revoked (18 USCA § 719) and he was ordered to serve the remainder of his original sentence with no allowance for good time.

The question presented is this: A prisoner's term, with statutory allowance for good time, expired September 14, 1931. On April 24, 1930, he was paroled within bounds and on conditions, until September 14, 1931. On September 24, 1931, he was discharged from parole. Without statutory allowance for good time, his term expired December 20, 1934. On April 10, 1934, his parole was revoked and he was recommitted for three years, two months and 24 days, thus forfeiting all good time and all time out on parole after September 24, 1931, when his parole was discharged.

Section 717, tit. 18 USCA, authorizes the issuance of a warrant to retake a prisoner on parole "at any time within the term or terms of the prisoner's sentence." Section 719 provides for a revocation of a parole, after a hearing, and that "the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."

If, therefore, the Board had power to revoke this parole in 1934, the writ must be denied, for the statute clearly provides for the service of the original sentence without allowance for the time out on parole.

The Board has no power to recommit a prisoner after his sentence is fully served. The statute conditions the power of the Board to retake a paroled prisoner to the time "within the term * * * of the prison-

er's sentence." What day marked the end of the prisoner's term? To answer that, we must answer two other questions:

■ (a) Is a prisoner on parole, who has observed its conditions, entitled to credit for time on parole? If he is not, it will be observed that a paroled prisoner can never serve out his sentence without recommitment. A paroled prisoner is not a free man; in this case he was not within prison walls, but he was confined to the state of Missouri; other restrictions, wholesome it is true, but nevertheless restrictions, were placed upon his liberties; he could be imprisoned again, under the statute, without indictment or jury trial. So it must be true that a paroled prisoner, living up to the conditions of his parole, is serving his sentence. While time spent on parole is a lower grade of punishment, the prisoner is none the less in the legal custody of the warden and confined within specified bounds. As long as the parole conditions are not breached he is absent from the prison with the permission of the authorities. He is not a free man but rather a prisoner with many privileges which have been accorded him because he is deemed trustworthy. He is a "trusty" with enlarged bounds. Not to permit his sentence to run while he is on parole would be to penalize a man for good behavior.

In Anderson v. Corall, 263 U. S. 193, 198, 44 S. Ct. 43, 44, 68 L. Ed. 247, the Supreme Court held:

"While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment."

To the same effect, see Anderson v. Williams (C. C. A.) 279 F. 822; Woodward v. Murdock, 124 Ind. 439, 24 N. E. 1047; Crooks v. Sanders, 123 S. C. 28, 115 S. E. 760, 28 A. L. R. 940; In re Prout, 12 Idaho, 494, 86 P. 275, 5 L. R. A. (N. S.) 1064, 10 Ann. Cas. 199.

When a prisoner violates the conditions of his parole, he then ceases serving time, just as an escape from prison walls. In addition, he forfeits the time theretofore served while on parole (18 USCA § 719) just as an escape forfeits good time theretofore earned. This record does not intimate that the applicant violated his parole prior to September 24, 1931; in fact, the parole officer wrote him that he had complied with all the conditions of the parole and dis-

charged him therefrom. On September 24, 1931, therefore, he had served his full sentence—if a prisoner, observing the terms of his parole, is entitled to the statutory allowance for good time.

(b) The petitioner alleges that while confined his conduct was exemplary and that he was entitled to the good time allowance. That brings us to the second question—Is a prisoner on parole entitled to the good time allowance, the same as a well-behaved prisoner within the walls? If he is, then petitioner had fully served his term on September 14, 1931, and he cannot be again imprisoned without another sentence for another offense.

Deduction from sentences, for good conduct, is prescribed by section 710, tit. 18 USCA. That section attaches to and becomes a part of every sentence imposed. It is applicable to prisoners "confined * * * in any United States penitentiary or jail." If this section stood alone, there would be room for respondent's contention that a paroled prisoner, not being confined in a penitentiary or jail, has no claim to the allowance. But the section does not stand alone. Section 716, authorizing the granting of paroles, provides that a paroled prisoner shall "remain, while on parole, in the legal custody and under the control of the warden of such prison from which paroled, and until the expiration of the term or terms specified in his sentence, less such good time allowance as is or may hereafter be provided for by law."

This, it seems to me, is a statutory recognition of the fact that a paroled prisoner is entitled to a good time allowance, for it limits the control of the warden over him to the term of his sentence less his good time allowance.

That such was the intention of Congress is made clear by the fact that Congress made material changes in the parole laws by the Act of June 29, 1932, 47 Stat. 381 (18 USCA § 709a and note, and §§ 710a, 716a, 716b). The title of that act declares its purpose "further to extend the provisions of the parole laws." Section 716a provides that a paroled prisoner shall continue under the control of the authorities until the expiration of the maximum term specified in his sentence "without deduction of such allowance for good conduct as is or may hereafter be provided for by law"; Section 716b provides that prisoners released after serving their term less their good time, shall be treated as paroled prisoners until their full sentence is served.

That Congress understood this was a change in the existing law is indicated by the fact that the new sections are limited to "prisoners hereafter sentenced."

In Anderson v. Corall, 263 U. S. 193, 44 S. Ct. 43, 44, 68 L. Ed. 247, the Supreme Court in marking the limits of the parole, stated that the prisoner on parole was in legal custody "until the expiration of the term, less allowance, if any, for good conduct."

In the recent case of Morgan v. Aderhold (C. C. A. 5) 73 F.(2d) 171, 172, the court in speaking of the parole statutes, said:

"The plan of good time allowances are not superseded by the parole. Good time credits are still to be allowed even while a prisoner is out on parole."

In Platek v. Aderhold (C. C. A. 5) 73 F.(2d) 173, 175, the court said:

"If the prisoner stands parole without a breach of it, his sentence expires just as though he were serving it inside the penitentiary, deduction for good conduct being similarly allowed."

Furthermore, that such was the administrative construction of statutes then existing is evidenced by the record before the court here—petitioner's sentence would have expired September 14, 1931, if he were entitled to good time while on parole; his parole is by its express terms to run until September 14, 1931, and the letter discharging him from parole is dated September 24, 1931.

We conclude that when the petitioner observed all the conditions of his parole until September 14, 1931, he had fully served his lawful sentence. His time had been served. The sentence was at an end. Neither the Board of Parole nor the court can breathe life into a sentence which has been finally terminated.

Anderson v. Corall, supra, is not opposed. Corall's term, with good time allowance, did not expire until March, 1917. In October, 1916, he violated his parole; he was then an escape, and the board had ample power to act when he was captured in 1920. To same effect are Biddle v. Asher (C. C. A. 8) 295 F. 670; Halligan v. Marcil (C. C. A. 9) 208 F. 403.

Anderson v. Williams (C. C. A. 8) 279 F. 822, involved facts similar to those in the case at bar. Williams' term expired November 18, 1917, without good time allowance. He was paroled in 1914. In 1919 he was recommitted and his parole revoked. The Eighth Circuit Court of Appeals held he was entitled to his release. This circumstance

is significant: The Williams Case was decided in the same opinion as the Corall Case. Certiorari was granted in the Corall Case and the Court of Appeals reversed, but the judgment in the Williams Case became final.

Summarizing: As to prisoners sentenced prior to the effective date of the Act of June 29, 1932 (47 Stat. 381) a paroled prisoner is entitled to credit for time on parole, and the statutory good time allowance, as long, and as long only, as he observes the conditions of his parole. When he breaches such conditions during the term of the parole, he is subject to recapture, and upon revocation of the parole, all time served on parole is forfeited.

It follows that the motion to dismiss the application for the writ should be overruled. Respondent's counsel has advised the court that the facts stated in the amended petition are true, and that he does not desire to answer. It therefore stands admitted that there was no violation of the parole prior to September 14, 1931. The writ will therefore issue forthwith. Its operation will be stayed until January 2, 1935, to afford respondent time to apply to the Court of Appeals for a further stay. Failing such further stay, the petitioner will be released on January 3, 1935.