**STORY v. RIVES, Superintendent of Asylum and Jail.**
No. 7035.

United States Court of Appeals for the District of Columbia.

Decided April 4, 1938.

Rehearing Denied May 9, 1938.

James J. Laughlin and Ralph A. Potts, both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and John J. Wilson, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before GRONER, STEPHENS, and MILLER, Associate Justices.

MILLER, Associate Justice.

This appeal comes to us from an order of the District Court dismissing a petition for a writ of habeas corpus and discharging the writ which had been theretofore issued and directed to appellee Rives in his capacity as Superintendent of the Washington Asylum and Jail.

On January 20, 1933, appellant pleaded guilty to the crime of robbery in the Supreme Court (now the District Court of the United States for the District of Columbia); was sentenced to serve a term of from two years and seven months to five years; and thereupon was committed to the District of Columbia Reformatory at Lorton, Virginia. Subsequently, he was transferred to the United States Northeastern Penitentiary and thereafter to the United States Hospital for Defective Delinquents at Springfield, Missouri.

On September 30, 1936, having served the maximum sentence imposed, less deductions allowed for good conduct, appellant was conditionally released under the Act of March 3, 1875, 18 Stat. 479, as amended by the Act of June 21, 1902, 32

184

Stat. 397, 18 U.S.C.A. §§ 710–713, the pertinent parts of which appear in the margin.[1]

On November 5, 1936, the United States Board of Parole, upon information that he had violated the conditions of his release, caused a warrant to be issued for the retaking of appellant. Several days later, on November 12, 1936, appellant was indicted for the commission of another crime, and, after waiving a jury trial, was convicted and sentenced by the District Court of the United States for the District of Columbia to nine months' imprisonment in the Washington Asylum and Jail. The warrant of the Parole Board was filed in the office of appellee as a detainer, thereby preventing the release of appellant after the service of his nine months' sentence. It was from custody under this warrant that appellant sought release by a writ of habeas corpus. The important question for decision, therefore, is whether the United States Board of Parole had authority to issue its warrant under the circumstances of this case. In our opinion it did.

According to the provisions of the Act of June 29, 1932, 47 Stat. 381, 18 U.S.C.A. § 716b, any prisoner sentenced after that date and who is not paroled but instead is released after serving the term for which he was sentenced, less deductions allowed therefrom for good conduct, is required to "be treated as if released on parole." Prisoners released by the Parole Board, 18 U.S.C.A. §§ 723a, 723b may be retaken for violation of the conditions of parole on warrants issued by it, or by any one of its members. 18 U.S.C.A. § 723c. In that event, the unexpired term of imprisonment of any such prisoner begins to run from the date of his ·return to the institution, and the time he was on parole does not diminish the time he was originally sentenced to serve. 18 U.S.C.A. § 723c.

Although release following the allowance of deductions for good conduct, as provided by statute, cannot be denied ·a prisoner,[2] nevertheless its granting in the first instance is in the nature of a privilege bestowed by the legislature (Aderhold v. Hudson, 5 Cir., 84 F.2d 559), and, consequently, is subject to all conditions properly attached thereto. By section 4 of the Act of June 29, 1932, 47 Stat. 381, 18 U.S.C.A. § 716b, Congress attached as a condition to the early release of any prisoner, on account of good conduct allowances, the limitation that he should be "subject to all provisions of law relating to the parole of United States prisoners." In other words, he is thereby placed under the supervision of the United States Board of Parole and becomes a ward of such Board automatically upon release.

Without more, the law as just stated is sufficient to establish the authority of the United States Board of Parole and the validity of its warrant in the present case. Appellant contends, however, (1) that as he was originally convicted in the District of Columbia he could not be lawfully incarcerated in a Federal penitentiary; (2) that he is subject exclusively to the parole laws of the District of Columbia, and that those laws give to the United States Board of Parole no authority to issue a warrant for his retaking; hence, that his detention under such a warrant is illegal and properly subject to attack by writ of habeas corpus. Both contentions are without merit. All persons convicted of offenses against the United States are committed to the custody of the Attorney General of the United States, who may designate the places of original confinement and order transfers from one institution to another. Act of May 14, 1930, 46 Stat. 326, § 7, 18 U.S.C.A. § 753f; Bailey v. United States, 10 Cir., 74 F.2d 451. A robbery

---

[1] Section 1 provides: "Each prisoner who has been or shall hereafter be convicted of any offense against the laws of the United States, and is confined, in execution of the judgment or sentence upon any such conviction, in any United States penitentiary or jail, or in any penitentiary, prison, or jail of any State or Territory, for a definite term, other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence to be estimated as follows, * * *

* * * *

"Each prisoner entitled to the deduction provided. for * * * shall be discharged at the expiration of his term of sentence less the time so deducted, and a certificate of the warden or keeper of the prison or penitentiary of such deduction shall be entered on the warrant of commitment. * * *" 18 U.S.C.A. §§ 710, 713.

[2] See United States ex rel. Anderson v. Anderson, 8 Cir., 76 F.2d '375; Howard v. United States, 6 Cir., 75 F. 986, 994, 34 L.R.A. 509; 1916, 30 Op.Attys.Gen. 569; 1909, 28 Op.Attys.Gen. 109.

committed in the District of Columbia is a crime against the United States, and, consequently, the offender comes within the provisions of the conditional release statute.[3]

The cases cited by appellant[4] are not in conflict with this well established view. Those cases do not involve violations of criminal statutes; all that they hold is that the laws of the District of Columbia, as enacted by Congress and embodied in its Code, are not general laws of the United States, having operation throughout the nation, but special enactments applicable only to the District of Columbia. The problem herein involved is neither referred to nor discussed.

In Tyner v. United States, 23 App.D.C. 324, 360, we held that the violation of a criminal law may constitute an offense against the United States although the act committed was a crime only in the District of Columbia. That the decision is sound we have no doubt.[5] Moreover, in Aderhold v. Lee, 5 Cir., 68 F.2d 824, certiorari denied 292 U.S. 633, 54 S.Ct. 718, 78 L.Ed. 1486, and Bracey v. Hill, D.C.M.D.Pa., 11 F.Supp. 148, affirmed, 3 Cir., 77 F.2d 970, the power of the Attorney General over the place of confinement of District of Columbia prisoners was sustained. The court said in the latter case (page 149): "The authority of the Attorney General to transfer prisoners from the District of Columbia to other penal institutions has existed and has been exercised and recognized for a long time prior to the Indeterminate Sentence and Parole Act. This act, as amended [section 10, enacted June 5, 1934, D.C. Code Supp. II, 1935, § 459], is not inconsistent therewith, but in fact recognizes and aids the exercise of that authority." Furthermore, it is provided by statute, Act of March 3, 1915, 38 Stat. 869, 18 U.S.C.A. § 704, that "The cost of the care and cus-

tody of District of Columbia convicts in any Federal penitentiary shall be charged against the District of Columbia * * *." This section impliedly recognizes the fact that District of Columbia prisoners may be incarcerated in Federal institutions. Nor is section 402, title 6, D.C.Code 1929, inconsistent with this position, as appellant contends, or with the statute in question.[6] Section 402, so far as applicable, provides: "Whenever any person has been convicted of crime in any court in the District of Columbia and sentenced to imprisonment for more than one year by the court, the imprisonment during the term for which he may have been sentenced or during the residue of said term *may be in some suitable jail or penitentiary or in the reformatory* of the District of Columbia; and it shall be sufficient for the court to sentence the defendant to imprisonment in the penitentiary without specifying the particular prison or the reformatory of the District of Columbia and the imprisonment shall be in such penitentiary, jail, or the reformatory of the District Columbia as the Attorney General shall from time to time designate: * * *" (Italics supplied.)

In support of his contention that he is subject exclusively to the parole laws of the District of Columbia, appellant relies particularly upon two Acts of Congress affecting prisoners convicted in the District. The first was approved July 15, 1932—subsequent to the date of the Act of June 29, 1932, 47 Stat. 381, 18 U.S.C.A. § 716b, which subjected all United States prisoners to the supervision of the United States Board of Parole. The Act of July 15, 1932 created a Board of Indeterminate Sentence and Parole for the penal institutions of the District of Columbia, and transferred to it all powers of the United States Board of Parole over "prisoners confined in the penal institutions of the District of Colum-

---

[3] Metropolitan R. Co. v. District of Columbia, 132 U.S. 1, 9, 10 S.Ct. 19, 33 L.Ed. 231; Geist v. United States, 26 App. D.C. 594; United States v. Colla, 37 App.D.C. 423; Fletcher v. United States, 42 App.D.C. 53; Arnstein v. United States, 54 App.D.C. 199, 296 F. 946.

[4] Washington A. & Mt. Vernon Ry. Co. v. Downey, 236 U.S. 190, 35 S.Ct. 406, 59 L.Ed. 533; American Security & Trust Co. v. District of Columbia, 224 U.S. 491, 32 S.Ct. 553, 56 L.Ed. 856; Newman v. United States ex rel. Frizzell, 238 U.S. 537, 35 S.Ct. 881, 59 L.

Ed. 446; American Security & Trust Co. v. Rudolph, 38 App.D.C. 32.

[5] See Kennedy v. United States, 265 U.S. 344, 44 S.Ct. 501, 68 L.Ed. 1045; 9 Hughes, Federal Practice, 1931, §§ 6740–6742. See, also, Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525, 528 et seq., 5 S.Ct. 995, 29 L.Ed. 264; O'Donoghue v. United States, 289 U.S. 516, 538–539, 545–546, 53 S.Ct. 740, 745, 746, 748, 77 L.Ed. 1356.

[6] Aderhold v. Lee, 5 Cir., 68 F.2d 824, 825, certiorari denied 292 U.S. 633, 54 S.Ct. 718, 78 L.Ed. 1486.

bia."[7] The second act upon which appellant relies was passed in June, 1934, amending the Act of July 15, 1932 so as to give to the United States Board of Parole "the same power and authority over prisoners convicted in the District of Columbia of crimes against the United States and now or hereafter confined in any United States penitentiary or prison (other than the penal institutions of the District of Columbia) as is vested in the Board of Indeterminate Sentence and Parole over prisoners confined in the penal institutions of the District of Columbia."[8]

Appellant contends that the effect of these two acts—July 15, 1932 and June 5, 1934—was to express a legislative intent that no prisoner convicted in the District of Columbia, should be subjected to the supervision of the United States Board of Parole under the provisions of section 4 of the Act of June 29, 1932, 18 U.S.C.A. § 716b, pertaining to the release of prisoners for good conduct. Such an intent is neither expressed nor implied in either of the Acts involved.

It will be noted that (1) these two acts relate exclusively to the parole of prisoners and do not purport to affect prisoners otherwise released; (2) they give to the District of Columbia Board power only over prisoners *confined* in the penal institutions of the District of Columbia [9] and, similarly, restrict the powers of the United States Board only as to prisoners so confined; (3) the Act of June 5, 1934 recognizes that prisoners convicted in the District of Columbia may be and are confined in other Federal penal institutions than those of the District of Columbia, and gives to the United States Board the same power over prisoners convicted in the District and confined elsewhere, as the District Board has over such prisoners confined in the District.

The Act of June 5, 1934 constituted an important extension of power in the United States Board over District of Columbia prisoners in that it permitted the Board to release such prisoners on parole from non-District institutions after serving only one-fifth of their maximum terms, while other United States prisoners could be released on parole only after serving one-third of the maximum.[10]

But neither Act has any bearing upon the release of prisoners other than on parole, and neither restricts in any way the power of the United States Board to supervise prisoners so released from institutions other than in the District under the provisions of section 4 of the Act of June 29, 1932, 18 U.S.C.A. § 716b. Appellant's contention is based, apparently, upon the misconception that the procedure of conditional release, created by that act, is incorporated into and made a part of the Federal parole procedure—in other words, that conditional release, following service of the full term of the sentence, less deductions for good conduct, is in fact parole. But it is not parole—any more than is probation or pardon, or the relaxed discipline of the honor camps maintained by the Attorney General.[11] It is instead a new procedure of conditional release. It is true the new law provides that a prisoner so released shall "be treated *as if released on parole.*"[12] For convenience of administration, Congress adopted, and made applicable to it, certain portions of the procedure of parole. This did not make the new procedure identical with parole, any more than does the fact that the Federal probation officers supervise both probationers and parolees make probation and parole identical. As a matter of fact, in one of its most important characteristics, parole differs irreconcilably from the new procedure of conditional release. A prisoner is released on parole by the United States Board of Parole wholly as a matter of discretion[13] when it is made to appear to said Board, from a report by the proper officers of any United States prison, or upon application by a prisoner for release on parole, "that there is a reasonable probability that such applicant will live and remain at liberty without violating the laws, and if [when] in the opinion of the board such release is not incompatible with the welfare of society * * *."[14] On the other hand,

---

[7] Sections 451–458, Tit. 6, D.C.Code, Supp. III, 1937, 47 Stat. 696–698.

[8] Section 459, tit. 6, D.C.Code, Supp. III, 1937, 48 Stat. 880.

[9] Aderhold v. Lee, supra, note 6.

[10] See ibid; Bracey v. Hill, D.C.M.D. Pa., 11 F.Supp. 148, affirmed, 3 Cir., 77 F.2d 970.

[11] 18 U.S.C.A. § 851; Morgan v. Aderhold, 5 Cir., 73 F.2d 171, 173.

[12] 18 U.S.C.A. § 716b.

[13] United States ex rel. Anderson v. Anderson, supra note 2.

[14] 18 U.S.C.A. § 716; see Redman v. Duehay, 9 Cir., 246 F. 283.

prisoners who come out under the new procedure of conditional release after having served the maximum sentence less good conduct allowances, are those who have been rejected by the Parole Board as unsafe risks; or, in other words, as to whom there is no reasonable probability that they will live and remain at liberty without violating the laws and whose release is incompatible with the welfare of society. Nevertheless, under the provisions of section 1 of the Act of March 3, 1875, 18 U.S.C.A. § 710, such a prisoner is entitled to deductions from his sentence when his prison record "shows that he has faithfully observed all the rules and has not been subjected to punishment" for infraction of prison regulations, and the duty to release him is mandatory.[15] Congress undoubtedly created this new procedure of conditional release because it realized that society would be better served if such prisoners were subjected to the same supervision as parolees, even though they had failed to convince the prison officials and the Parole Board that their release was sufficiently compatible with the welfare of society to justify parole.

▮ Appellant further contends that, in any event, the statute providing for release of prisoners for good conduct[16] is not applicable to prisoners convicted in the United States courts in the District of Columbia because it is limited in its application to prisoners sentenced for definite terms;[17] and that an indeterminate sentence, the imposition of which is compulsory in the District since the Act of July 15, 1932, does not come within its purview. Consequently, appellant contends that as he was sentenced under the Act of July 15, 1932, he is controlled by it alone. The argument is without merit, being founded upon an erroneous conception of the nature of an indeterminate sentence.

An indeterminate sentence is one for the maximum period imposed by the court, subject to termination by the Parole Board at any time after service of the minimum period. In United States ex rel. Paladino v. Commissioner of Immigration, 2 Cir., 43 F.2d 821, 822, it was said: "Indeterminate sentences have long been held sentences for the maximum term for which the defendant might be imprisoned. This is the construction not only placed upon sentences where a maximum and minimum period of imprisonment appears in the sentence, but also upon sentences where no term is mentioned and the statute sets the maximum. People ex rel. Haupt v. Lasch, 122 Misc. Rep. 223, 202 N.Y.S. 416; People ex rel. Clark v. Warden, 39 Misc.Rep. 113, 78 N.Y.S. 907; Ex parte Lee, 177 Cal. 690, 171 P. 958; State v. Perkins, 143 Iowa 55, 120 N.W. 62, 21 L.R.A.(N.S.) 931, 20 Ann. Cas. 1217; Commonwealth v. Brown, 167 Mass. 144, 45 N.E. 1; Commonwealth v. Kalck, 239 Pa. 533, 87 A. 61; Woods v. State, 130 Tenn. 100, 169 S.W. 558, L.R.A. 1915F, 531; State v. Page, 60 Kan. [664] 669, 57 P. 514; People v. Connors, 291 Ill. 614, 126 N.E. 595; Hulbert v. Fenton, 115 Neb. 818, 215 N.W. 104; In re Smith, 212 Mich. 78, 179 N.W. 346."[18]

▮ Appellant next contends in support of the writ, first, that the sentence imposed on December 17, 1936 was illegal, and, second, that the trial on December 17, 1936 "did not constitute a valid waiver of jury trial." These contentions are without merit. The return and answer to the writ discloses that the warrant under which appellant is held was issued by a member of the United States Board of Parole, and the warrant shows clearly upon its face that it is based upon appellant's violation of the conditions of his release from custody under his sentence for robbery. It was issued upon "reliable information," given to a member of the Parole Board,[19] to the effect that appellant was found drunk in a room with a woman whom he was attempting to rape. This, being sufficient cause for revocation of parole,[20] was sufficient cause for his detention in the present case. Consequently, whether appellant was indicted and convicted for

---

[15] United States ex rel. Anderson v. Anderson, supra note 2.

[16] See note 1, supra.

[17] Ibid.

[18] See, also, Lee Lim v. Davis, 75 Utah 245, 284 P. 323, 76 A.L.R. 460; People v. Washington, 264 N.Y. 335, 191 N.E. 7; Haley v. Hollowell, 208 Iowa 1205, 227 N.W. 165; People v. Peters, 246 Ill. 351, 92 N.E. 889.

[19] See Christianson v. Zerbst, 10 Cir., 89 F.2d 40, holding that when the warrant is issued upon *some* information, the reliability of such information cannot be looked into.

[20] 18 U.S.C.A. §§ 716, 717; Christianson v. Zerbst, supra note 19; Morgan v. Aderhold, supra note 11.

assault becomes immaterial. Furthermore, a petition for a writ of habeas corpus challenges only the lawfulness of the custody and detention of the prisoner. It cannot be used as a means of securing the judicial determination of any other question, or as a writ of error, or to modify or revise even the judgment of conviction upon which his custody and detention are based. See Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009; McNally v. Hill, 293 U.S. 131, 139, 55 S.Ct. 24, 27, 79 L.Ed. 238. In the present case appellant seeks to go even farther and attack the proceedings and judgment in a case other than the one upon which his present custody and detention are based. This is clearly improper. Compare Bowles v. Laws, 59 App.D.C. 399, 402, 45 F.2d 669, 672.

It is also contended that the warrant issued by the United States Board of Parole was violative of the Fourth, Fifth and Sixth Amendments of the Constitution of the United States because it was not under oath, was not issued upon probable cause, and did not acquaint appellant with the nature of the offense committed.

Appellant completely misconstrues the nature and purpose of the laws governing parole[21] and conditional releases.[22] A warrant issued for the retaking of a person under these laws proceeds upon an entirely different premise and serves a different purpose than in the case of a warrant for the arrest of a person charged with the commission of a crime. A released prisoner is not a free man. Prior to the expiration of his maximum term he is a ward of the Parole Board, subject to its control and care. The Supreme Court has characterized the violation of a condition of parole as being, in legal effect, on the same plane as an escape from the custody of the warden. "His status and rights were analogous to those of an escaped convict." Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 45, 68 L.Ed. 247. See Stockton v. Massey, 4 Cir., 34 F.2d 96; Morgan v. Aderhold, 5

Cir., 73 F.2d 171. Consequently, it cannot be said that the retaking of a prisoner who is already within the legal custody of the authorities constitutes an arrest within the meaning of the constitutional provisions.

Nor need the warrant be under oath, for the same reasons. See Jarman v. United States, 4 Cir., 92 F.2d 309. There it is said (page 311): "We think, however, that it is proper to observe that the warrant in question was not a warrant for the arrest of one to be charged with and tried for a crime, nor for search and seizure of property, as contemplated in the Fourth Amendment to the Constitution. * * * Since he was not to be tried upon any charge contained in the warrant for his arrest, the issuance of the warrant was only for two purposes, first, to restore him to actual custody and, second, to advise him of the purpose of his reincarceration within the walls of the penitentiary. As stated he was already not merely in custody but in charge of the officials * * *."

The same argument disposes of appellant's contention that the Act of June 29, 1932, requiring him to serve the remainder of the original sentence without deducting the time he was out on release, is a bill of attainder.[23] The act does not attempt "to inflict punishment without a judicial trial," or otherwise. The penalty suffered by a prisoner who is returned to custody following violation of the conditions of his release is the serving of the balance of his sentence, for which credit for good conduct was provisionally allowed. The rule applicable is the same as that which controls when a prisoner is returned to custody following a breach of parole. The sentence originally imposed was merely suspended during the period of parole. Anderson v. Corall, supra.

We have considered carefully appellant's other contentions and find them to be without merit.

Affirmed.

---

[21] 18 U.S.C.A. §§ 714–722.
[22] 18 U.S.C.A. §§ 710–713, 716b.

[23] U.S.Const. Art. 1, § 9.