## GOULD v. GREEN.

### No. 8614.

United States Court of Appeals,
District of Columbia.

Decided Feb. 28, 1944.

Mr. William H. Collins, of Washington, D. C., for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Appellant was sentenced on May 13, 1938, in the District Court of the United States for the District of Columbia, to a term of from two to five years, following conviction of a felony, namely, the interstate transportation of stolen property. He served this sentence in penal institutions of the District of Columbia, and was released on January 17, 1942, after having served his maximum sentence, less a good conduct allowance, as provided by law,[1] which amounted to 480 days. The Board of Indeterminate Sentence and Parole for the District of Columbia imposed conditions of release, which were violated by appellant, as a result of which he was recommitted. Appellant

[1] Act of June 21, 1902, 32 Stat. 397, 18 U.S.C.A. § 710.

534

sought a writ of habeas corpus, which was denied by the District Court. This appeal is from the order of the District Court discharging the writ of habeas corpus, dismissing the petition and remanding appellant.

The sole question of the case is whether the District of Columbia Board has power under the law to impose conditions upon the release of a prisoner who has served the full time of his sentence less deduction for good conduct, and in the event of violation of those conditions, to recommit him to serve out the balance of his term. Decision of this question involves interpretation of the several statutes, which provide for deduction of time for good conduct, and which define the powers of the District of Columbia Board, and the federal Board of Parole.

The Act of March 3, 1875, as amended in 1902, provides that each prisoner convicted of any offense against the laws of the United States for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment "shall be entitled to a deduction from the term of his sentence * * *" for a certain number of days each month depending upon the length of the sentence imposed. This law has been interpreted to mean that such a prisoner earns such deductions and is entitled to them as a matter of right.[2]

Thereafter, in 1910,[3] Congress created a Board of Parole and empowered it to release prisoners upon a showing "that there is a reasonable probability that such applicant will live and remain at liberty without violating the laws * * * if in the opinion of the board such release is not incompatible with the welfare of society * * *." In this Act it was provided that the Board of Parole could prescribe terms and conditions governing the conduct of paroled persons until the expiration of the term or terms specified in their sentences less such good conduct allowance as provided by law.

In 1932, this law was changed in two important respects: (1) It was provided,[4] that any prisoner paroled under authority of the parole laws, should continue on parole until the expiration of the maximum term without deductions of time for good conduct; and (2) it was provided,[5] that any prisoner who shall have served the term for which he is sentenced less deductions allowed therefrom for good conduct shall upon release "be treated as if released on parole and shall be subject to all provisions of law relating to the parole of United States prisoners * * *."

In the same year, 1932, Congress provided for a separate board in the District of Columbia,[6] and that the federal Board of Parole should no longer have jurisdiction over prisoners "confined in the penal institutions of the District of Columbia * * *."[7]

It is clear from the foregoing legislation that the federal Board of Parole has power to impose conditions upon the release of a prisoner, not only when he is released upon parole, but when he is released upon the expiration of his maximum term less deductions for good conduct.[8] This being true, if the appellant in the present case had been confined in a federal institution there would have been no question of the power of the federal Board of Parole to impose conditions upon his release and to order his recommitment for violation thereof. The only question of the case is whether the District of Columbia Board has similar power. The controversy upon this point arises from the following facts: The law which expanded the power of the federal Board of Parole in such manner as to give that Board power to impose conditions upon the release of a prisoner following the expiration of his maximum term, less deductions for good conduct, and to order his recommitment for violation of those conditions, was passed on June 29, 1932, and became effective on July 29, 1932. On the

---

[2] Story v. Rives, 68 App.D.C. 325, 330, 97 F.2d 182, 187; King v. United States, 69 App.D.C. 10, 12, 98 F.2d 291, 293; Douglas v. King, 8 Cir., 110 F.2d 911, 913, 127 A.L.R. 1200; Clark v. Surprenant, 9 Cir., 94 F.2d 969, 973.

[3] Act of June 25, 1910, 36 Stat. 819, 18 U.S.C.A. §§ 715, 716.

[4] Act of June 29, 1932, 47 Stat. 381, 18 U.S.C.A. § 716a.

[5] Act of June 29, 1932, 47 Stat. 381, 18 U.S.C.A. § 716b.

[6] Act of July 15, 1932, 47 Stat. 696, D.C.Code, 1940, § 24—201.

[7] Act of July 15, 1932, 47 Stat. 696, 698, D.C.Code, 1940, § 24—208.

[8] Story v. Rives, 68 App.D.C. 325, 97 F.2d 182.

other hand, the Act creating the District of Columbia Board became effective on July 15, 1932, approximately two weeks before the effective date of the Act expanding the power of the federal Board of Parole. It is this hiatus of approximately two weeks between the effective dates of the two acts which presents the problem of the present case.

The District of Columbia Board looks for its power to Section 9 of the Act which created it, and which section reads as follows: "SEC. 9. *Upon the appointment of the members* of said board, *the powers of the existing parole board* [the federal board] over prisoners confined in the penal institutions of the District of Columbia *shall cease and determine and all the powers of said existing parole board* [the federal board] under the authority of the Act of Congress approved June 25, 1910, entitled 'An Act to parole United States prisoners, and for other purposes,' as amended, over said prisoners confined in the penal institutions of the District of Columbia *shall be transferred to and vested in* said Board of Indeterminate Sentence and Parole: *Provided, however,* That in the case of a prisoner convicted of felony committed prior to the effective date of this Act, and in the case of any prisoner convicted of misdemeanor when the aggregate sentence imposed is in excess of one year, said Board of Indeterminate Sentence and Parole may parole said prisoner, under the provisions of this Act, after said prisoner has served one-fifth of the sentence imposed." [9] (Italics supplied in part; words within brackets supplied.)

■ Appellant's contention in this case requires, for its support, an interpretation of the several statutes above referred to, that the newly created District of Columbia Board received only those powers of the federal Board of Parole which existed in that Board over prisoners confined in the penal institutions of the District of Columbia at the time the District Act became effective. Appellee, on the other hand, contends that the newly created District of Columbia Board received such powers over prisoners confined in the penal institutions of the District as existed in the federal Board of Parole upon the date of the appointment of the members of the District of Columbia Board.

We have concluded that appellee's contention is correct. It seems obvious that Congress used words deliberately intended to prevent any hiatus in the exercise of powers by the two boards over District prisoners. If Section 9 of the District Act had said, "upon the effective date of this Act, the powers of the federal board shall cease, and all its powers shall be transferred to and vested in the District of Columbia Board," then there would have been room for appellant's argument. However, by providing for a transfer of powers "Upon the appointment of the members * * *" of the District of Columbia Board, the difficulty was avoided; the new Board took up exactly where the old Board left off and, from the moment of their appointment, the members of the new Board were immediately vested with all the powers possessed by the federal Board over District prisoners in District institutions. The fact is that the new District of Columbia Board was not appointed until August 30, 1932. At that time, there can be no doubt, the federal Board was possessed of the expanded powers provided by the federal Act.[10] Consequently, there can be no doubt that the District of Columbia Board, upon its creation, by appointment of its members, was authorized to exercise the same powers over prisoners confined in District of Columbia penal institutions; even though the District Act did not in terms refer to conditional release of non-paroled prisoners.

■ Appellant contends further, in support of his position, that upon the date of its appointment in August, 1932, the District of Columbia Board had no prisoners upon whom to operate, and could have none, until prisoners had been convicted thereafter and had served at least a minimum of four months in the penal institutions of the District. However, this argument is effectively rebutted by the concluding sentence of Section 9 of the District Act, which provides expressly that the Board may exercise its powers "in the case of a prisoner convicted of felony committed prior to the effective date of this Act, and in the case of any prisoner convicted of misdemeanor when the aggregate sentence imposed is in excess of one year * * *."

■ But, entirely apart from any such technical considerations, we think the intent of Congress is clearly revealed, in these

---

[9] Act of July 15, 1932, 47 Stat. 696, 698, D.C.Code, 1940, § 24—208.

[10] 47 Stat. 381, 18 U.S.C.A. §§ 716a, 716b.

several acts, to provide a uniform administration of the federal and District laws with respect to the control of released prisoners. There is no reason to impute to Congress an intention to retain for the administration of justice in the District of Columbia a method of treatment for released prisoners which was devised more than a half century ago, while providing for the rest of the country a method of treatment more consistent with the results of scientific study by penal authorities during the years which have intervened. To disregard the obvious import of the language of Section 9 of the District Act, which provides expressly for a transfer of powers from one Board to the other, in favor of an interpretation which depends upon the chance happening that one of two copending bills received legislative approval before the other, does not impress us as being either persuasive or plausible. This is especially true in view of the fact that no legislative history has been produced to reflect such a legislative intent.

Affirmed.