JONES v. CLEMMER.

No. 9251.

United States Court of Appeals
District of Columbia.

Argued June 5, 1947.

Decided Sept. 4, 1947.

STEPHENS, Associate Justice, dissenting in part.

———◆———

Mr. Benjamin H. Jones, pro se.

Mr. John D. Lane, Asst. U. S. Atty., of Washington, D. C., with whom Messrs. George Morris Fay, U. S. Atty., and Joseph F. Lawless, Asst. U. S. Atty., both of Washington, D. C., were on the brief, for appellee.

Mr. Roger Robb, of Washington, D. C., appointed by the court as amicus curiae, filed a brief and participated in the argument.

Before STEPHENS, EDGERTON, and WILBUR K. MILLER, Associate Justices.

EDGERTON, Associate Justice.

This appeal is from an order dismissing a petition for habeas corpus. In 1937 appellant received concurrent sentences for uttering and false pretenses, and began serving them at the District of Columbia Reformatory at Lorton, Virginia. He was released on parole on December 23, 1938. On June 22, 1939 a warrant was issued for his arrest for violation of parole but was not served because he could not be found. August 4, 1943 he was committed to jail on new charges of forgery and uttering. He was afterwards convicted, and on October 15, 1943 received new concurrent sentences. He was returned to the reformatory at Lorton to serve these new sentences. On February 4, 1946 he had served out the new sentences, less commutation for good behavior, and was "conditionally released." February 5, 1946 he was arrested under the 1939 warrant as a violator of parole under

his original sentences. February 19, 1946 that parole was revoked, and he was recommitted to serve the remainder of his original sentences.

His principal contentions are (1) that since he complied with the terms of parole for six months, so much should be credited on the remainder of his original sentences, and (2) that since the statute, D.C.Code (1940) § 24—206, provided that the unexpired term of a parole violator shall "begin to run from the date he is returned to the institution," his original sentences ran concurrently with his later sentences and therefore have been fully served.[1] The first contention is answered by statutory language in effect when appellant was first sentenced and substantially unchanged. It provides that "the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."[2] Applying identical language in the Federal Parole Act, 18 U.S.C.A. § 719, the Supreme Court has held that a parole violator may be required "to serve the remainder of the sentence originally imposed without any allowance for the time he was out on parole."[3] Appellant's second contention is answered by Zerbst, Warden v. Kidwell, 304 U.S. 359, 362, 58 S.Ct. 872, 82 L.Ed. 1399, 116 A.L.R. 808. Construing language of the Federal Parole Act substantially the same as that on which appellant relies, the Court said: "Obviously, this provision does not require that a parole violator's original, unexpired sentence shall begin to run from the date he is imprisoned for a new and separate offense. It can only refer to reimprisonment on the original sentence under order of the Parole Board." It is immaterial that the Parole Board did not serve the warrant as soon as it might, and did not give appellant a hearing at its next meeting after the warrant had been issued and appellant had been arrested on new charges, but did these things only on the expiration of his new sentences.[4]

Appellant contends that by virtue of statutory language in effect when he was sentenced,[5] and afterwards modified,[6] he earned commutation of his sentences by good conduct during as well as before the first six months of his parole. We need not pass upon this contention. It is immaterial, because any right to commutation which appellant may have earned at any time before he was recommitted to the reformatory was conditional and was forfeited by his violation of parole.[7]

There is no error. But "we have power not only to correct error in the judgment under review but to make such disposition of the case as justice requires. And in determining what justice does require, the Court is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered. We may recognize such a change, which may affect the result, by setting aside the judgment and remanding the case so that the [District] court may be free to act."[8]

Appellant is not represented by counsel. At the request and to the great assistance

[1] He also infers from 47 Stat. 698, § 5, amended 54 Stat. 243, § 4, and D.C.Code (1940) § 24—205, that the warrant for his arrest as a parole violator should have been served as soon as he was re-arrested and committed to jail.

[2] 47 Stat. 698, § 6, 54 Stat. 243, § 5, D.C.Code (1940) § 24—206.

[3] Anderson v. Corall, 263 U.S. 193, 197, 44 S.Ct. 43, 45, 68 L.Ed. 247.

[4] Hammerer v. Huff, 71 App.D.C. 246, 110 F.2d 113. Although the Supreme Court did not think this point worth mentioning, it is clear from Kidwell v. Zerbst, D.C., 19 F.Supp. 475, and Zerbst v. Kidwell, 5 Cir., 92 F.2d 756, 759, that it was involved in Zerbst, Warden v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399, 116 A.L.R. 808.

[5] 47 Stat. 697, C. 492, Sec. 4, D.C.Code 1940, § 24—204.

[6] 54 Stat. 243.

[7] Zerbst, Warden v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399, 116 A.L.R. 808 ("Some were released with credit for good conduct * * *." Footnote 1, at page 360 of 304 U.S., at page 872 of 58 S.Ct., 82 L.Ed. 1399, 116 A.L.R. 808); Story v. Rives, 68 App.D.C. 325, 97 F.2d 182, certiorari denied 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377; United States ex rel. Rowe v. Nicholson, 4 Cir., 78 F.2d 468, certiorari denied 296 U.S. 573, 56 S.Ct. 118, 80 L.Ed. 405; Sanford, Warden v. Runyon, 5 Cir., 136 F.2d 54; Taylor v. Squier, 9 Cir., 142 F.2d 737, certiorari denied 323 U.S. 755, 65 S.Ct. 82, 89 L.Ed. 604.

[8] Patterson v. Alabama, 294 U.S. 600, 607, 55 S.Ct. 575, 79 L.Ed. 1082. Ameri-

of this court, Mr. Roger Robb has acted as *amicus curiae*. He calls our attention to the fact that after this appeal had been heard, and on July 17, 1947 Congress passed "An Act to reorganize the system of parole of prisoners convicted in the District of Columbia." [9] Section 5 of this Act amends D.C.Code (1940) § 24—206 to read as follows: "When a prisoner has been retaken upon a warrant issued by the Board of Parole, he shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board. At such hearing he may be represented by counsel. The Board may then, or at any time in its discretion, terminate the parole or modify the terms and conditions thereof. *If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody. For the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered as a new sentence.* The time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced." (Italics supplied.) Until this amendment, the law did not permit a prisoner whose parole had been revoked to earn any commutation of the remainder of his sentence. By the amendment, as the House Committee on the District of Columbia said in its Report on the bill, "Provision is * * * made for a more just and orderly method of applying good-time credits when parole has been revoked." [10] A letter of approval from the Commissioners of the District of Columbia, made a part of the Report, states: "The third important change [made by the bill] is that a prisoner whose parole is revoked may earn good time upon the balance of his sentence. Under present law, no good-time deduction is allowed such a prisoner, and, therefore, he has no incentive to obey the rules and regulations of the institution in which he is confined."

██ We do not think Congress intended to deal more justly only with prisoners whose parole might afterwards be revoked and to discriminate against those whose parole had already been revoked. The amendment is remedial and should be construed liberally. So construed it applies to "the remainder of the sentence[s] originally imposed" upon appellant which was still to be served when he was returned to custody under those sentences. It is grammatically capable of this application.[11] The correctness of this construction of the amendment is fairly apparent when the amendment is read in the light of the basic good-conduct legislation which it modifies and extends. This basic legislation provides that: "*Each prisoner who has been or shall hereafter be convicted* of any offense against the laws of the United States, *and is confined, in execution of the judgment or sentence* * * * whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, *shall be entitled to a deduction from the term of his sentence to be estimated as follows, commencing on the first day of his arrival at the penitentiary,* prison, or jail: Upon a sentence of not less than six months nor more than one year, five days for each month," etc.[12] This basic legislation plainly conferred retrospectively upon prisoners whose "arrival at the penitentiary" had al-

---

can Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360; Busey v. District of Columbia, 319 U.S. 579, 63 S. Ct. 1277, 87 L.Ed. 1598.

9 Pub.L.No.198, Ch. 263, 80th Cong., 1st Sess., 61 Stat. 379.

10 H.R.Rep. No. 451, 80th Cong., 1st Sess.

11 The meaning of "shall be revoked" is not necessarily limited to "shall become revoked." The participle "revoked," like other participles, may be an adjective as well as a verb. Even as a matter of strict grammatical analysis, therefore, the phrase "If the order of parole shall be revoked," which introduces the new provision for commutation, may include the meaning "If the order of parole shall be a revoked order." Appellant's order of parole is a revoked order.

12 Criminal Code, U.S.C.A. Title 18, § 710. Emphasis supplied. Cf. Story v. Rives, 68 App.D.C. 325, 97 F.2d 182, certiorari denied 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377.

ready occurred the same benefit which it conferred prospectively upon other prisoners. It made commutation not only an incentive to future good conduct but also a reward for past good conduct. We find no sufficient evidence that Congress changed its position in this respect and intended the recent amendment to furnish only an incentive. "It is clear that 'all acts *in pari materia* are to be taken together, as if they were one law.'"[13]

Our conclusion that the amendment has full retrospective as well as prospective effect is confirmed by the fact that both the United States Attorney and the *amicus curiae* agree with it. Moreover the only possible alternative conclusion would be that the amendment did not apply at all, either as reward or as incentive, to prisoners whose parole had already been revoked. The statutory words "If the order of parole shall be revoked," etc., either include or exclude past revocations: we cannot have it both ways, either in this case alone or in this case and a future one. Whether or not the facts of this case excuse us from presently ruling on the point, it is too clear for argument that either (1) a prisoner whose parole has already been revoked is entitled to commutation for good conduct from the beginning of his reimprisonment, or else (2) such a prisoner cannot earn commutation by future good conduct. The second alternative would make the new law less just than the old, in disregard of the plain intention of Congress to make it more just. The old law discriminated between men who had violated parole and men who had not. That discrimination had at least some appearance of fairness. But if the amendment were interpreted as not applying to men whose parole had already been revoked, it would be made to discriminate between some parole violators and other parole violators, allowing some to earn commutation by good conduct and others not, on the purely arbitrary basis of the time when revocation of their parole had happened to occur.

The case is therefore remanded to the District Court for further proceedings. If computations which have been made are correct, and if appellant's conduct since he was recommitted to serve the remainder of his sentences has been good, he is now entitled to be discharged from the reformatory.

STEPHENS, Associate Justice (dissenting in part).

I agree with the conclusions reached in the majority opinion except in respect of the effect of Pub.L. No. 198, 80th Cong., 1st Sess., "To reorganize the system of parole of prisoners convicted in the District of Columbia," effective July 17, 1947, hereafter sometimes referred to as the 1947 D.C. Parole Act. Roger Robb, Esq., as *amicus curiae,* has called the court's attention to this Act. He refers particularly to Section 5 thereof reading as follows:

Sec. 5. Section 6 of the Act of July 15, 1932 (ch. 492, 47 Stat. 698; title 24, D.C.Code, sec. 206), as amended by the Act of June 6, 1940 (ch. 254, 54 Stat. 242), is amended as follows:

"Sec. 6. When a prisoner has been retaken upon a warrant issued by the Board of Parole, he shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board. At such hearing he may be represented by counsel. The Board may then, or at any time in its discretion, terminate the parole or modify the terms and conditions thereof. *If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody.* For the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered as a new sentence. The time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced.

"In the event a prisoner is confined in, or as a parolee is returned to a penal or correctional institution other than a penal or correctional institution of the District of Columbia, the Board of Parole created by the Act of May 13, 1930 (ch. 255, 46 Stat. 272, 18 U.S.C. 723a), shall have and exercise the same power and authority as the Board of Parole of the District of Columbia had the prisoner been confined in or returned to a penal or correctional institution of the District of Columbia."

---

[13] United States v. Stewart, 311 U.S. 60, 64, 61 S.Ct. 102, 105, 85 L.Ed. 40.

Mr. Robb suggests that the first paragraph of this amendment is remedial, the antecedent 1940 D.C.Parole Act containing no provision for commutation for good conduct earned after return of a paroled prisoner to custody, and that it should therefore be retrospectively applied, and that as a result, assuming good conduct on his part prior to the effective date of the Act, the appellant became entitled to discharge from the penitentiary on August 11, 1947.[1] Under settled authority the court must determine this case under this statute if applicable. American Steel Foundries v. Tri-City Central Trades Council, 1921, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360. The District Attorney, with commendable frankness, expresses himself as likewise in favor of retrospective application of Section 5 of the 1947 D.C.Parole Act. Conceding that it is literally prospective, he suggests that it is *in pari materia* with the Federal commutation statute, 18 U.S.C.A. §§ 710–712 (applicable to prisoners convicted in the District of Columbia of crimes against the United States, Story v. Rives, 1938, 68 App.D.C. 325, 97 F.2d 182, certiorari denied 1938, 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377), and should therefore be construed as itself retroactive and hence applicable to the appellant, notwithstanding that his parole was revoked prior to its effective date. The District Attorney cites United States v. Stewart, 1940, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40, to the effect that statutes *in pari materia* are to be construed as one law.

I give great weight to the views of Mr. Robb as amicus curiae, and of the District Attorney. But upon questions of law in a case involving the administration of the statutes relating to punishment and rehabilitation, a matter of public interest, the court must reach it own conclusion. Cf.

Young v. United States, 1942, 315 U.S. 257, 62 S.Ct. 510, 86 L.Ed. 832; Parlton v. United States, 1935, 64 App.D.C. 169, 75 F.2d 772. And I am of the view that Section 5 of the 1947 D.C.Parole Act cannot, under the facts now before the court, be applied to the appellant.

The 1947 D.C.Parole Act, of which the quoted provision is a part, is, as its title states, a reorganization of the system of parole of prisoners convicted in the District of Columbia. Section 1 creates a Board of Parole. Section 2 transfers to that Board the powers, the various officers and employees except the members, the official records, and the unexpended appropriations, of a previously existing (by virtue of the 1932 and 1940 D.C.Parole Acts) "Board of Indeterminate Sentence and Parole." Section 2 also defines the duties of a "parole executive" which are to include the preparation for consideration by the Board of all applications of prisoners for parole. Section 3 provides for the release of a prisoner upon parole, if he has served the minimum sentence imposed upon him or the prescribed portion of his sentence, upon such terms and conditions as the Board shall from time to time prescribe. Section 4 authorizes the Board under named conditions to apply to the court which imposed sentence upon a prisoner for a reduction of his minimum sentence and authorizes the court to act upon such an application at any time prior to the expiration of the minimum sentence. Section 5 has been set forth above. Section 6 extends the power of the Board of Parole to all prisoners whose sentences exceed 180 days, and provides that a prisoner convicted of an offense other than a felony may not be paroled until he has served one-third of the sentence imposed or one-third of the aggregate sentences imposed if there are two or more. Section 7

---

[1] It is agreed by the District Attorney on the faith of a computation made by Mr. Robb and not disputed by the appellant that, apart from the operation of the 1947 D.C. Parole Act if applicable to the appellant, the date for the completion of service of his first sentences is December 27, 1947, to wit, 689 days from February 5, 1946, when he was taken into custody under the warrant of June 22, 1939; and that if Section 5 of the 1947 Act is applicable, the appellant is entitled to good conduct allowance earned by him after being taken on the warrant of 6 days per month, making a total good conduct credit of 138 days against the balance of 689 days; and that with this deduction, the unexpired portion of the appellant's first sentences which he began to serve on February 5, 1946, expired August 11, 1947.

repeals D.C.Code (1940) §§ 24—201 and 202 which created the previous Board of Indeterminate Sentence and Parole and provided for an executive secretary and other employees. Providing thus in both title and body for the administration of a system of parole of prisoners convicted in the District of Columbia, the 1947 Act looks to the future. This is as true of Section 5 as it is of any of the other parts of the Act. The first three sentences of Section 5 give general directions as to the manner of dealing with a prisoner who has been retaken upon a Board of Parole warrant. They afford him an opportunity to be heard and right of representation by counsel and permit the Board to terminate the parole or modify its terms and conditions. These provisions look to the future.[2] The italicized portion quoted above, which is of particular pertinence in the instant case, is in unequivocally future terms: "If the order of parole *shall be revoked,* the prisoner, unless subsequently reparoled, *shall serve* the remainder of the sentence originally imposed less any commutation for good conduct which *may be earned* by him after his return to custody." (Italics supplied)[3] The first sentence following this provision is a direction with reference to computation of commutation necessitated by the fact that under the commutation provision, 18 U.S.C.A. § 710, the amount of commutation allowed per month increases with the length of the sentence imposed. The last sentence in the paragraph is but a re-enactment of a similar provision in the 1932 D.C. Parole Act. These two sentences are equivocal as to the prospective or retrospective operation of Section 5 of which they are a part. On the face of the 1947 D.C.Parole Act there is no ambiguity, and hence nothing to construe. The rule that a remedial act may be construed to apply retrospec-

tively (Crawford, *Statutory Construction* (1940) § 282) is, therefore, not applicable.

Assuming a latent ambiguity and consulting legislative history, it appears again that Congress did not intend to confer the benefit of the good conduct commutation provision of Section 5 of the 1947 Act upon a prisoner in the situation of the appellant. The House Report (H.R.Rep.No.451, to accompany H.R.494, 80th Cong., 1st Sess.), among other things states that "The third important change [made by the bill] is that a prisoner whose parole is revoked may earn good time upon the balance of his sentence. Under present law, no good-time deduction is allowed such a prisoner, and, therefore, he has no incentive to obey the rules and regulations of the institution in which he is confined." As to the appellant Section 5, if retrospectively applied, would operate not to furnish an incentive to good conduct but to confer a reward in the form of a diminution of his sentence on account of good conduct rendered prior to passage of the Act. As above stated, if the 1947 Act applies retrospectively to the appellant, he was entitled to release on August 11, 1947. The effective date of the Act, July 17, 1947, was less than one month prior thereto. Therefore not even for the period between July 17 and August 11 would the Act operate as an incentive for the appellant, for, under Section 710 of the commutation statute referred to above, deductions are counted at a given number of days for *each month,* varying according to the length of the sentence. In the absence of clear words expressing such an intent I think a purpose should not be attributed to Congress to diminish, by way of reward for good conduct rendered by a prisoner prior to the passage of the Act, a sentence lawfully imposed upon him. Had Congress had such a purpose in mind it could easily

---

[2] So much is frankly conceded by the District Attorney who says in his brief: "The procedures set down in the statute for hearing, representation by counsel, etc., obviously apply only to prisoners newly retaken whose parole has not yet been revoked."

[3] In respect of this provision the District Attorney's brief states: "The language of the section would seem to indicate a contrary intention [contrary to the

District Attorney's suggestion theretofore set out in his brief that a retroactive application "would seem to be in order"] as it is in the future tense. The section states, *inter alia,* that after revocation of parole a prisoner 'shall serve the remainder of the sentence originally imposed less any commutation for good conduct which *may be earned* by him after his return to custody.' (Underlining supplied)."

have said so, as it did in the commutation statute itself in Section 710 above referred to.

As to the *in pari materia* argument suggested by the District Attorney: It can hardly be claimed that the 1947 D.C.Parole Act as a whole and the commutation statute, 18 U.S.C.A. §§ 710–712, are *in pari materia*. The latter sections, a part of the Federal Criminal Code relating to Federal prisoners and their treatment, deal only with commutation for good conduct, whereas the 1947 D.C.Parole Act is a general revision of the parole statutes for the District of Columbia. Assuming, however, that because of the reference in Section 5 of the 1947 Act to commutation for good conduct that section is *in pari materia* with the Federal commutation statute just mentioned, still I find no basis for a conclusion that the language of Section 5 must therefore be given a retrospective application. As said above, the argument is that statutes *in pari materia* are to be taken together as if they were one law, and from this as a predicate it is urged that if Sections 710–712 of the commutation statute and Section 5 of the 1947 D.C.Parole Act are "one law," the retroactive provisions in the commutation statute operate to make Section 5, as a part of the same "one law," also retroactive. But this does not necessarily follow. It is within the competency of Congress, if it sees fit to do so, to make one part of a "one law" dealing with a given subject expressly retroactive and another part of the same "one law" dealing with a different, although related subject, not so; and this is what Congress has done if Sections 710–712 of the commutation statute and Section 5 of the 1947 D.C.Parole Act are treated as "one law." The introductory sentence of Section 710 provides that *"Each prisoner who has been or shall hereafter be convicted* of any offense against the laws of the United States, and is confined . . . for a definite term, other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction . . ."* (computed in a manner then specifically set forth). Section 711 authorizes the Attorney General upon recommendations on evidence submitted to him by the warden of a Federal penitentiary to restore to a prisoner forfeited good time. And Section 712 expressly makes Sections 710 and 711 apply to all sentences imposed subsequent to July 21, 1902, and to the sentences imposed prior to that date, the commutation upon which is less than that provided in Sections 710 and 711. But treating the words of Section 5 of the 1947 D.C. Parole Act—"If the order of parole *shall be revoked,* the prisoner, unless subsequently reparoled, *shall serve* the remainder of the sentence originally imposed less any commutation for good conduct which *may be earned* by him after his return to custody." (Italics supplied)—as a part of the "one law," they create, notwithstanding the expressly retroactive provisions of Sections 710–712, no ambiguity requiring retrospective construction of the entire "one law." They merely, by the use of clear terms of futurity, apply the commutation provision of the "one law" prospectively to a given class of prisoners, to wit, those whose parole "shall be revoked."

It is urged that Section 5 of the 1947 Act should be given both full retrospective and full prospective application because otherwise, so it is asserted, it will not apply at all to a prisoner in appellant's situation either as a reward or as an incentive, *i. e.,* will not apply to a prisoner whose parole has been revoked prior to July 17, the effective date of the Act, even though he may thereafter conduct himself in a manner which would otherwise entitle him to commutation. But this contention assumes that the court must now rule upon the applicability of the Act to such a prisoner. This assumption is in my view not warranted. I think the court should now rule only upon the question immediately before it, *i. e.,* as to the applicability of Section 5 of the 1947 Act to a prisoner whose parole was revoked prior to July 17 and whose good conduct was also rendered prior to that date. No claim and no showing have been made in the instant case that the appellant is entitled to release by virtue of good conduct rendered subsequent to July 17 if the Act is applicable to him notwithstanding that his parole was revoked prior to that date. I think the ruling of the court should be confined strictly to the state of facts made to

appear in the instant case, *i. e.*, whereunder both revocation of parole and the rendering of good conduct occurred prior to July 17—so that if Section 5 were to be applied it would operate not as an incentive to good conduct but as a reward therefor. I think that as to such a prisoner the Act does not apply. Conceivably a case may arise in which, under the facts shown therein, it will be proper to raise the question whether Section 5 of the 1947 Act is latently ambiguous in respect of its applicability to a prisoner who renders good conduct after July 17 but whose parole was revoked before that date, and in which it will therefore be proper to urge a construction of the Act which will make it non-discriminatory as between such a prisoner and one who likewise has rendered good conduct after July 17 but whose revocation of parole has also occurred after that date. Such a case should be dealt with if and when it arises.

I think, therefore, that the judgment of the District Court dismissing the appellant's petition for a writ of habeas corpus should be affirmed.