Lawrence H. Cooke, J.
In response to a direction that it submit a constitutionally valid plan of reapportionment, defendant Board of Supervisors has offered a proposed local law providing, among other things: that a 'County Board of Legislators shall be the elective governing body of the county; that the designation of the Sullivan County Board of Supervisors shall cease to exist as of January 1, 1968; that 15 County Legislators, one from each town, shall be elected at general elections on odd numbered years, the first to be at the general *980 election of 1967; that all Supervisors of the towns in the county shall be eligible to be elected as members of the County Board of Legislators; and that said local law shall become effective only if approved by the affirmative vote of a majority of the qualified electors voting upon said law at the general election of November 7, 1967.
Section 411 of the County Law, entitled “ Holding more than one elective office”, states clearly: “No county judge, family court judge, surrogate, district attorney, sheriff, county clerk or any elective county officer shall be eligible to hold at the same time any other elective county or town office, or that of city supervisor. ”
In Knauf v. County Legislature of County of Monroe (27 A D 2d 440, 441; see, also, Matter of Knauf v. County Leg. of County of Monroe, 53 Misc 2d 917) the Appellate Division, Fourth Department, held: “A Town Supervisor is an elective town officer (Town Law, § 20, subd. 5). Under the provisions of section 411 of County Law plaintiff is not eligible to hold the office of Town Supervisor at the same time that he is the County Legislator. ”
However, it is argued substantially on behalf of the board that section 411 of the County Law is not a general law and, there being no applicable statutory restriction, a local law may be enacted relating to the qualifications of county officers pursuant to section 2 of article IX of the State Constitution and section 10 of the Municipal Home Buie Law. Overlooking the obvious problem created by the proposal’s provision that County Legislators shall be elected at the same general election at which the passage and effectiveness of the local law is to be determined, said argument is based on the erroneous premise that section 411 of the County Law is special and not general.
As used in said article IX of the Constitution, a ‘1 General law ” is “A law which in terms and in effect applies alike to all counties; all counties other than those wholly included within a city, all cities, all towns or all villages ” and a “ Special law ” is “A law which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages ” (N. Y. Const., art. IX, § 3; cf. Municipal Home Buie Law, § 2).
It is well settled that a statute need not apply to all persons or places in the State in order to be deemed general in nature; it may be limited in its application according to specified conditions which are common to a class and reasonably related to the subject matter (Matter of Cutler v. Kerman, 3 N Y 2d 334, 338; Matter of New York El. R. R. Co., 70 N. Y. 327, 350; Whole *981 sale Laundry Bd. of Trade v. City of New York, 43 Misc 2d 816, 818, affd. 22 A D 2d 762, affd. 15 N Y 2d 604). Section 411 of the County Law does not apply to all persons in the State but it does relate to a class of persons and is applicable to said class and all in said class in each and every county of the State. It does not relate to particular persons in the class. It is a general law.
Despite the defect arising from the prohibition of section 411 of the County Law and because of the urgency of the situation, further discussion is required and the parties are entitled to an indication as to the validity of the basic feature of the proposed local law. In lannucci v. Board of Supervisors of Washington County and Saratogian, Inc. v. Board of Supervisors of Saratoga County (20 N Y 2d 244), involving “ adjusted weighted voting” and “ fractional weighted voting” plans, the Court of Appeals held that it was not readily apparent on its face whether either of the plans met the constitutional standard, that it was incumbent upon the respective Board of Supervisors to come forward with the requisite proof that its plan was not defective and, since this whs not done, that the courts below correctly determined that the plans were invalid. The court held (pp. 251-252):
“ The significant standard for measuring a legislator’s voting power * * * is not the number or fraction of votes he may cast but, rather, his * ability * # * by his vote, to affect the passage or defeat of a measure ’. * * *
“ The principle of one man — one vote is violated, however, when the power of a representative to affect the passage of legislation by his vote, rather than by influencing his colleagues, does not roughly correspond to the proportion in his constituency # * * Ideally, in any weighted voting plan, it should be mathematically possible for every member of the legislative body to east the decisive vote on legislation in the same ratio which the population of his constituency bears to the total population. Only then would a member representing 5% of the population have, at least in theory, the same voting power (5%) under a weighted voting plan as he would have in a legislative body which did not use weighted voting — e.g., as a member of a 20-member body with each member entitled to cast a single vote. This is what is meant by the one man-one vote principle as applied to weighted voting plans for municipal governments. A legislator’s voting power, measured by the mathematical possibility of his casting a decisive vote, must approximate the power he would have in a legislative body which did not employ weighted voting. ”
*982 From the uncontradicted testimony given by Gerald Rubin, an International Business Machines computer analyst and mathematician, in relation to the basic weighted voting plan encompassed in the proposed local law, it is obvious that each legislator’s voting power, measured by the mathematical possibility of his casting a decisive vote, approximates the power he would have in a legislative body which does not employ weighted voting, and that it is mathematically possible for every member of the legislative body to cast the decisive vote on legislation in substantially the same ratio which the population of his constituency bears to the total population. From this standpoint, the proposal meets the requirements set forth in Iannucci and Saratogian.
It is urged on behalf of the two defendant towns that the proposed law would be unconstitutional because of malapportionment in the committees of the County Board of Legislature. At this juncture and in view of the disposition arrived at herein, it suffices to quote subdivision 6 of section 154 of the County Law, entitled “Committees” and being a part of article 4 dealing with Boards of Supervisors, stating “ Nothing herein shall be deemed to authorize the delegation of any of the powers, duties or responsibilities of the board of supervisors or of any officer except as otherwise expressly authorized by law. ’ ’ Attention is called, also, to: Birdsall v. Clark, 73 N. Y. 73, 76; People ex rel. Vaughan v. Supervisors, 52 Hun 446, affd. 119 N. Y. 636; Peoples. Hagadorn, 36 Hun 610, affd. 104 N. Y. 516, 522; People v. Supervisors of St. Lawrence County, 25 Hun 131, 133-134; Brown v. Ward, 216 N. Y. S. 402, 407-408; 1903 Atty. Gen. 517; 4 Op. St. Comp. 202 (1948); 13 N. Y. Jur., Counties, § 79; 1 McQuillin, Municipal Corporations [2d ed], § 395.
Section 23 of the Municipal Home Rule Law, entitled “ Local laws subject to mandatory referendum ”, provides in part: “ 2. Except as otherwise provided by or under authority of a state statute, a local law shall be subject to mandatory referendum if it: * * * f. Abolishes, transfers or curtails any power of an elective officer, g. Creates a new elective office. ” Significant is the word “ any ” which has been defined judicially to mean “ all ” or “ every ” and the use of the word imports no limitation (Randall v. Bailey, 288 N. Y. 280, 285; Weinstein v. Sinel, 133 App. Div. 441; People v. Del Gardo, 1 Misc 2d 821, 825; Matter of Singer [State Laundry Co.], 189 Misc. 150, 151, affd. 273 App. Div. 755; People v. Gravenhorst, 32 N. Y. S. 2d 760; Matter of Schuster, 111 Misc. 534, 538). Insofar as the proposed local law would create a new elective office, it would be subject to a mandatory referendum. There may be thought on the part *983 of one or more of the parties that a referendum would not be necessary if the Board of Supervisors were retained with a system of weighted voting; but a local law with such a framework would transfer or curtail power, i.e., voting power, from certain elective officers, a Supervisor being an elective officer (Town Law, § 20, subds. 1, 5; Matter of Knauf v. County Legislature of County of Monroe, 53 Misc 2d 917, 919; see, also, 27 A D 2d 440, supra), and a mandatory referendum would be required.
The advisability or preferability per se of one plan, as opposed to others, is not the issue before the court for, as previously pointed out in this matter, legislative reapportionment is primarily a matter for legislative consideration and determination and judicial relief becomes appropriate only when a legislature fails to reapportion according to constitutional requirements in a timely fashion after having had an adequate opportunity to do so (Reynolds v. Sims, 377 U. S. 533, 586). Having arrived at this position of disapproval of the plan in the form as propounded, but with an eye on the time requirements imposed relative to the coming general election, it seems advisable to grant another period, this one of five days, to defendant board, to enable it to submit one or more constitutionally valid plans of reapportionment. The matter is adjourned to August 30, 1967 at 10 a.m.