Bruce **SHATTUCK**, Petitioner,

v.

John W. **GRIDER**, Warden, Oklahoma State Reformatory, Respondent.

No. A–17016.

Court of Criminal Appeals of Oklahoma.

Jan. 26, 1972.

Bruce Shattuck, pro se.

Larry Derryberry, Atty. Gen., for respondent.

SIMMS, Judge:

This is an application for habeas corpus wherein Bruce Shattuck, hereinafter referred to as petitioner, alleges that his constitutional rights have been violated and the State of Oklahoma has broken its contract with petitioner in canceling out certain credits for blood donations made by petitioner prior to his release on parole.

Although petitioner does not state how much blood time he accrued prior to his release and before the revocation of his parole for its violation, he has substantially raised the question of whether an inmate who contributes blood prior to his release on parole is entitled to good time credits when he is returned to prison for a violation of parole. The statute relating to good time credits is 57 O.S.1968, § 138, which provides, in pertinent part:

"Every convict who shall have no infractions of the rules and regulations of the prison or laws of the State recorded against him shall be allowed for his term a deduction to two (2) months in each of the first two (2) years; * * * And, in addition to the deduction above provided for, every convict shall be entitled to a deduction from his sentence of two (2) days for every six (6) days' work performed by him; and each convict shall also, in addition to all such deductions, be entitled to a deduction of twenty (20) days for each pint of blood he donates to the American Red Cross or to any agency or a hospital approved for such purpose by the Warden. * * * Inmates on parole who are returned to the institution as parole violators shall be deprived of *any* credits earned up to the date of their release on parole. Provided, however, that no convict shall be entitled to deduction for good time as herein provided in the event he has been guilty of misconduct or violation of the prison rules and regula-

tions, unless relieved therefrom by the Warden. * * * " [Emphasis added]

Legislative authority to enact statutes such as the one in question is clearly provided for in Article 6, § 10, of the Oklahoma Constitution, which provides as follows:

"The Governor shall have the power to grant, after conviction and after favorable recommendation by a majority of the said Board, commutation, pardons and paroles for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, *subject to such regulations as may be prescribed by law.*" [Emphasis added]

In treating the subject of parole, as distinguished from pardon, a uniformly accepted statement of the law may be found at 67 C.J.S. Pardons § 20b, pages 604, 605:

"A parole is a mere matter of grace, favor, or privilege, and a prisoner is not entitled thereto as a matter of right. *Subject to the limitations imposed by statute,* [emphasis added] the question whether a prisoner shall be paroled is a matter for the discretion of the paroling authority, * * *."

■ We must, therefore, conclude the language in the statute "Inmates on parole who are returned to the institution as parole violators shall be deprived of any credits earned up to the date of their release on parole" is a limitation imposed upon a parolee by constitutionally sound legislative enactment.

Title 57, O.S.*1961*, § 138, provided:

"* * * Inmates on parole who are returned to the institution as parole violators *shall retain the credits earned up to the date of their release on parole.*" [Emphasis added]

This Court held, in construing the 1961 Act, that a parolee whose parole has been revoked does not lose his credits for good behavior, etc., earned before the parole, but is entitled to all the lawful credits earned up to the date he was released on parole.

See, In re Salisbury, Okl.Cr., 369 P.2d 476 (1962).

However, the Legislature of this State in 1968, amended the statute under consideration and provided for deprivation of *any* credits earned up to the date of their release on parole.

The narrow issue before this Court is: Does the use of the word "any" in the *1968* Act, supra, embrace credits earned by a prisoner by reason of his having donated blood.

Defendant cites no authority and this Court is unable to find any authority for the contention that blood credits become vested on the theory of contract.

Article 5, § 57, Oklahoma Constitution, provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."

Title 57, O.S. *1968*, § 138, has but one subject, to-wit: the earning of time credits by an inmate and includes both credit for blood donated and good time credits under the same statute. The 1971 Amendatory Act contains the exact language with reference to forfeiture of time credits by a returned parolee.

■ When meaning of portion of body of statute is uncertain, title of statute may be considered to determine Legislative intent in view of this constitutional provision. State, ex rel., Board of Education of City of Tulsa v. Morley, 168 Okl. 259, 34 P.2d 258 (1934).

■ The title to Senate Bill 135, Second Session of the 31st Legislature, 1968, codified as 57 O.S.1968, § 138, reads: *"Providing for Deprivation of Credits for Persons Returned to Prison as Parole Violators".* [Emphasis added] Obviously, it was the intent of the Legislature that a returned parolee be deprived of credits which could be earned under the authority of that statute, whether they be for good time or blood. This is emphasized by the insertion of the word "any" within the body of the law.

Generally, the word "any" is defined to mean one out of many, or an indefinite number, and is given the full force of "every" or "all." Black's Law Dictionary, Revised 4th Ed., at page 120.

More specifically, the word "any" ". . . has been defined judicially to mean 'all' or 'every' and the use of the word imports no limitation." Shilbury v. Bd. of Supervisors, 54 Misc.2d 979, 284 N.Y.S.2d 124, at 129 (1967).

Going directly to the proposition of the construction of the word "any" within a statute, the court in Hime v. City of Galvestion, 268 S.W.2d 543 (1967) stated:

"Further, the word 'any' has been judicially construed to mean: 'each' or 'every' or 'all'; and particularly in construing statutes, the word 'any' is equivalent to and has the force of 'every' and 'all'."

The majority rule is that a prisoner's good time allowance may be forfeited or denied for his violation of the terms of his parole. This rule is followed in the following jurisdictions: Alabama: Rockholt v. State, 41 Ala.App. 337, 132 So.2d 269 (1961); California: Ex parte Borgfeldt, 75 Cal. App.2d 83, 170 P.2d 94 (1946); Connecticut: Moulthrop v. Walker, 120 Conn. 164, 26 A.2d 789; District of Columbia: Jones v. Clemmer, 82 U.S.App.D.C. 288, 163 F.2d 852 (1947); Florida: Dear v. Mayo, 153 Fla. 164, 14 So.2d 267, cert. den. 320 U.S. 766, 64 S.Ct. 42, 88 L.Ed. 458 (1943); Michigan: Robinson v. Gries, 277 Mich. 15, 268 N.W. 794 (1936); Montana: Re Pelke, 139 Mont. 354, 365 P.2d 932 (1961); New Hampshire: Gobin v. Clark, 94 N.H. 167, 49 A.2d 167 (1946); New York: People, ex rel. Behar v. Fay, 36 Misc.2d 474, 232 N.Y.S.2d 720 (1962); Pennsylvania: Commonwealth ex rel. Palmiere v. Ashe, 139 Pa.Super 425, 12 A.2d 505 (1940); South Carolina: Ex parte Wilson, 219 S.C. 139, 64 S.E.2d 400 (1951); and Utah: McCoy v. Harris, 108 Utah 407, 160 P.2d 721 (1945).

In *Dear, supra,* the Florida Court stated:

"Parole and gained time is granted by the sovereign as a matter of grace rather than right. The obvious purpose is to encourage the wrongdoer to amend his ways and relieve the state of added responsibility for his care. The state may offer such grace under and subject to conditions as it may consider most conducive to accomplish the desired purpose. * * *"

■ Petitioners contention that he had contracted with the State in donating the blood for good time credits is wholly without merit, for the decision to donate blood is a personal decision of the petitioner, subject to the statute which limits the conditions under which good time credits for shortening the term of his sentence will be allowed.

■ We are of the opinion, and therefore hold, that a convict who donates blood prior to his release from the penitentiary on parole, is not entitled to good time credits for the contribution made prior to his release when he is subsequently returned to the penitentiary for a violation of parole.

The Writ of Habeas Corpus is accordingly denied.

BUSSEY, P. J., specially concurring.

BRETT, J., concurs in part, and dissents in part.

BUSSEY, Presiding Judge (specially concurring):

I am in accord with the views expressed and the authorities cited by Judge SIMMS. I think it is unquestionably clear that the Legislature is authorized, under the Constitution, to determine under what conditions credits to shorten a sentence may be given. I believe that even a most cursory examination of the statute reflects the clear Legislative intent to grant blood credits only when the party, subsequently released on parole, does not violate the terms of the parole. Any attempt by the Court to construe the statute otherwise would, in my opinion, violate the separation of powers

provision which restricts the Court from invading the province of the Legislature. If the Legislature, in their wisdom, for public policy reasons, wish to amend the statute and create a vested, irrevocable right in an inmate for time credits for blood donated which may not be revoked for a violation of parole or the rules of the penitentiary, they can do so, but the Court has no authority or jurisdiction to invade the Legislative authority.

BRETT, Judge (concurs in part, and dissents in part):

I concur in that part of this decision as it relates to the general interpretation of legislation; that a parole is granted as a matter of grace by the executive branch of Government; and that there is not necessarily a contractual agreement between an inmate and the state, as it pertains to the giving of blood for time credits. However, I dissent to the ultimate conclusions reached in this decision; and I am not especially impressed by the majority holdings of other states, as they pertain to the revocation of blood credits when an inmate's parole is revoked. I concede also that I have been unable to find any jurisdiction which has ruled contrary to the majority view herein; but nonetheless, I believe that the giving of blood—under statutory authority—can be likened unto the passage of time toward the fulfillment of a prison sentence. I would hold that the time credit granted for the giving of blood becomes a vested credit when the blood is actually removed from an inmate; and that those credits should not be revocable credits, even though the inmate's parole is subsequently revoked. The provision allowing blood credits has made available a major source for the donation of blood for use by the general public. The time credits allowed served as an incentive to facilitate that source of supply; consequently, I believe as a matter of public policy, if for no other reason, that source should not be jeopardized.