OSCN Found Document:Question Submitted by: The Honorable Roger Thompson, Oklahoma State Senate, District 8

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Roger Thompson, Oklahoma State Senate, District 8
2023 OK AG 2
Decided: 03/15/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 2, __ __

 
¶0 This Office has received your request for an Official Attorney General Opinion in which you ask, in effect, the following question:
Do the statutory provisions found in 37A O.S.2021, §§ 3-119, 3-120 and 3-121 permitting up to a 15% ownership of stock between the alcoholic beverage manufacturing, wholesaling, and retailing tiers violate the prohibition on any common ownership between the alcoholic beverage manufacturing, wholesaling, and retailing tiers found in Oklahoma Constitution Art. 28A, § 2(A)(1)?
I.
BACKGROUND
¶1 The Oklahoma Supreme Court in Institute for Responsible Alcohol Policy v. State ex rel. Alcoholic Beverage Laws Enforcement Commission, 2020 OK 5, ¶¶ 3--4, 457 P.3d 1050, 1052--53, previously provided a thorough background on the history of Oklahoma's alcoholic beverage laws and the approval of Article 28A of the Oklahoma Constitution. That background is incorporated into this Opinion by reference.
¶2 In summary, Article 28A of the Oklahoma Constitution was placed on the November 2016 ballot as State Question 792 after it was passed by a joint resolution of the Oklahoma Legislature. Id. at ¶ 4, 457 P.3d at 1052--53. State Question 792 was ultimately approved by the people of Oklahoma with 65.62% of the vote. Id. "[I]t went into effect on October 1, 2018." Id. It "fundamentally changed how Oklahoma regulates the sale and distribution of alcohol." Id.
¶3 As it relates to this Opinion, a key portion of the approval process for Article 28A of the Oklahoma Constitution was the "Final Ballot Title for State Question No. 792" prepared by a prior Administration of this Office consistent with 34 O.S.Supp.2015, § 9. The Final Ballot Title for State Question No. 792 (the "Final Ballot Title") stated as follows:
This measure repeals Article 28 of the Oklahoma Constitution and restructures the laws governing alcoholic beverages through a new Article 28A and other laws the Legislature will create if the measure passes.
The new Article 28A provides that with exceptions, a person or company can have an ownership interest in only one area of the alcoholic beverage business-manufacturing, wholesaling, or retailing
. Some restrictions apply to the sales of manufacturers, brewers, winemakers, and wholesalers. Subject to limitations, the Legislature may authorize direct shipments to consumers of wine.
Retail locations like grocery stores may sell wine and beer. Liquor stores may sell products other than alcoholic beverages in limited amounts.
The Legislature must create licenses for retail locations, liquor stores, and places serving alcoholic beverages and may create other licenses. Certain licensees must meet residency requirements. Felons cannot be licensees.
The Legislature must designate days and hours when alcoholic beverages may be sold and may impose taxes on sales. Municipalities may levy an occupation tax. If authorized, a state lodge may sell individual alcoholic beverages for on-premises consumption but no other state involvement in the alcoholic beverage business is allowed.

With one exception, the measure will take effect October 1, 2018.

(Emphasis added).
¶4 Section 2 of Article 28A of the Oklahoma Constitution now states, in pertinent part, that "[T]here shall be prohibited any common ownership between the manufacturing, wholesaling and retailing tiers, unless otherwise permitted by this subsection." OKLA. CONST. art. 28A, § 2(A)(1)(a).
¶5 The Oklahoma Legislature passed companion legislation to State Question 792, Senate Bill No. 383, which added §§ 3-119, 3-120 and 3-121 of Title 37A to the Oklahoma Statutes, that are at issue in this Opinion. These statutes generally address the limitations on the rights and ownership interests between the alcoholic beverage manufacturing, wholesaling, and retailing tiers. All three statutes have an identical prohibition against owning "fifteen percent (15%) or more of the stock" in legal entities that participate in different alcoholic beverage tiers from one another. Stated another way, the subject statutes would permit owning 14.99% of the stock in a legal entity conducting business in the alcohol manufacturing tier while simultaneously owning an unlimited amount of the stock in a separate legal entity conducting business in a separate tier, e.g., the alcohol wholesaling or alcohol retailing tier. This Opinion addresses whether these statutes permitting a limited amount of ownership in more than one alcoholic beverage tier violate the prohibition in OKLA. CONST. art. 28A, § 2(A)(1) against any common ownership in more than one alcoholic beverage tier. In this Office's opinion, they do.
II.
DISCUSSION
¶6 The Final Ballot Title provided to the voters when passing State Question No. 792 is dispositive to the issues presented in this Opinion. It informed voters, with limited exceptions that are not applicable here, that State Question No. 792 would limit a person or company to "an ownership interest in only one area of the alcoholic beverage business--manufacturing, wholesaling, or retailing" tiers.[1] Therefore, for the reasons set forth below, this Office concludes that the statutory provisions found in §§ 3-119, 3-120 and 3-121 of Title 37A of the Oklahoma Statutes permitting up to a 15% ownership of stock between the alcoholic beverage manufacturing, wholesaling, and retailing tiers violate the prohibition on any common ownership between the alcoholic beverage manufacturing, wholesaling and retailing tiers found in OKLA. CONST. art. 28A, § 2(A)(1).
OKLA. CONST. art. 28A, § 2(A)(1), as explained in the Final Ballot Title for State Question No. 792, precludes an ownership interest in more than one alcoholic beverage tier. Therefore, sections 3-119, 3-120 and 3-121 of Title 37A of the Oklahoma Statutes are unconstitutional to the extent they permit less than 15% ownership of stock in entities involved in different alcoholic beverage manufacturing, wholesaling, and retailing tiers from one another.
¶7 "In deciding the constitutionality of statutes, a legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution." Reherman v. Okla. Water Res. Bd., 1984 OK 12, ¶ 11, 679 P.2d 1296, 1300. Constitutional provisions are interpreted "in conformity with their ordinary significance in the English language--given their commonly accepted and nontechnical meaning." Inst. for Responsible Alcohol Pol'y, 2020 OK 5 ¶ 14, 457 P.3d at 1055--56.
¶8 Here, Sections 3-119, 3-120 and 3-121 of Oklahoma Statutes Title 37A permit up to 15% ownership of stock in two or more entities that are part of separate alcoholic beverage tiers. Nevertheless, Oklahoma Constitution Article 28A, Section 2 states, in pertinent part, that "there shall be prohibited any common ownership between the manufacturing, wholesaling and retailing tiers, unless otherwise permitted by this subsection." OKLA. CONST. art. 28A, § 2(A)(1)(a) (emphasis added). The exceptions identified in OKLA. CONST. art. 28A, § 2(A) relate solely to brewers' ability to obtain a beer wholesaler license to distribute beer, winemakers' ability to sell wine directly to customers who are physically present at the winery and "a small brewer as defined by law." Id. at § 2(A)(1)--(4). None of the exceptions resolves the question presented in this Opinion. Therefore, the pivotal issue in this Opinion is the meaning of the phrase "any common ownership" in OKLA. CONST. art. 28A, § 2(A)(1)(a).
¶9 The phrase common ownership is not defined in the Oklahoma Constitution or by Oklahoma courts.[2] Further, there is no dictionary definition of the phrase. For example, common ownership is not defined in Black's Law Dictionary. However, the individual words common and ownership do have their own definitions that shed light on the meaning of this phrase. Black's Law Dictionary provides a single definition of ownership. It defines ownership as: "The bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others." Ownership, BLACK'S LAW DICTIONARY (11th ed. 2019).
¶10 The word common, on the other hand, has multiple definitions. Relevant to this inquiry, the Merriam-Webster Dictionary[3] defines common as: (1) "belonging to or shared by two or more individuals or things or by all members of a group"; (2) "occurring or appearing frequently"; and (3) "widespread." [4] The first definition of common ("belonging to or shared by two or more individuals or things or by all members of a group") suggests that owning one share of stock in two different legal entities would qualify as common ownership. This is because the owner of one share of stock would likely share ownership with two or more members of a group (e.g., other stockholders). On the other hand, the latter definitions ("occurring or appearing frequently" or "widespread") suggest that there must be significant ownership of stock in two different legal entities to qualify as common ownership.
¶11 The Final Ballot Title resolved any ambiguity in the phrase common ownership, by interpreting it, along with the remaining language in OKLA. CONST. art. 28A, § 2(A)(1), to preclude owning even one share of stock in entities that participate in different alcoholic beverage tiers from one another. As it relates to ballot titles, the Oklahoma Supreme Court has made clear that:
[T]he intent of the framers and electorate is also reflected in the ballot title of the proposed amendment [to the Constitution]. The ballot title and text of the provision are to be read together, even if the text contains no ambiguities or absurdities. The ballot title is a contemporaneous construction of the constitutional amendment and weighs heavily in determining its meaning. 
Fent v. Fallin, 2014 OK 105, ¶ 11, 345 P.3d 1113, 1116--17.
¶12 Here, the Final Ballot Title told the voters: "The new Article 28A provides that with exceptions, a person or company can have an ownership interest in only one area of the alcoholic beverage business-manufacturing, wholesaling, or retailing."[5] As previously discussed, the limited exceptions in the new Article 28A for brewers, winemakers and small brewers are not applicable to the question presented in this Opinion. Notably absent from the Final Ballot Title is the word common immediately preceding the phrase ownership interest. One share of stock would certainly qualify as an ownership interest in a legal entity. Therefore, OKLA. CONST. art. 28A, § 2(A)(1) appears to have been contemporaneously interpreted in the Final Ballot Title as precluding owning even one share of stock in entities that are in different alcoholic beverage tiers from one another.
¶13 Further supporting this interpretation of Article 28A, Section 2(A)(1) in the Final Ballot Title is the fact that the term any immediately precedes the phrase common ownership in the Constitution itself. Id. "Generally, the word 'any' is defined to mean one out of many, or an indefinite number, and is given the full force of 'every' or 'all.'" Shattuck v. Grider, 1972 OK CR 37, ¶ 14, 493 P.2d 829, 832 (quoting Black's Law Dictionary, Revised 4th ed., at 120). Therefore, OKLA. CONST. art. 28A, § 2(A)(1)(a) could be restated to prohibit every and all common ownership, including an indefinite number of common ownerships. The indefinite number aspect of the definition of any suggests that the drafters of OKLA. CONST. art. 28A, § 2(A)(1) did not intend to permit even a miniscule amount of overlapping ownership between alcoholic beverage tiers. This is because one share of stock falls under the integrant of an indefinite number of shares of stock. Therefore, the use of the term any before common ownership suggests that OKLA. CONST. art. 28A, § 2(A)(1)(a) precludes owning even one share of stock in entities that are in different alcoholic beverage tiers from one another. Id.
¶14 This interpretation is also supported by the final sentence of OKLA. CONST. art. 28A, § 2(A)(1)(c), which reiterates and restates the prohibition as follows: "Except as provided in this subsection, and except for a small brewer as defined by law, no other member of one tier may own an interest in a business licensed in a different tier[.]" Id. The Merriam-Webster Dictionary defines member as "one of the individuals composing a group" or "a part of a whole."[6] The owner of one share of stock is one of the individuals composing a group (owners of stock in the company) and is part of the whole ownership group. Likewise, Oklahoma tax law defines a member as "any person who is a shareholder of an S Corporation, a partner in a general partnership, a limited partnership, or limited liability partnership, a member of a limited liability company, or a beneficiary of a trust." 68 O.S.2021, § 2385.29(1).[7] Therefore, it is clear that the owner of one share of stock in a company is a member of the entity. Accordingly, the final sentence of OKLA. CONST. art. 28A, § 2(A)(1)(c) reiterates and restates the interpretation that owning even one share of stock in entities that are in different alcoholic beverage tiers from one another is prohibited.
¶15 It should be noted that other statutes, regulations, and case law define the phrase common ownership as requiring simultaneous significant ownership in two or more entities such that the subject owner has control over all entities. First, there are provisions in Title 2 of the Oklahoma Statutes concerning agriculture that state the term "'[c]ommon ownership' includes but is not limited to any corporation, partnership or individual where the same owner has power or authority to manage, direct, restrict, regulate or oversee the operation or has financial control of the facility[.]" 2 O.S.2021, § 20-3(B)(10); see id. §§ 10-9.1(B)(8), 20-41(B)(10). Second, there are unrelated federal regulations that define common ownership as when "an individual or individuals possess significant ownership or equity in the subcontractor and the entity providing the services under the contract." 42 C.F.R. § 420.301. Finally, at least one out-of-state appellate court has concluded that "[a] finding of common ownership is almost invariably linked with a concomitant finding of control." Amherst Nursing Home, Inc. v. Com., 16 Mass. App. Ct. 638, 643, 454 N.E.2d 498, 501--02 (1983) (citing N.L.R.B. v. Elias Bros. Big Boy, Inc., 325 F.2d 360, 362 (6th Cir.1963); N.L.R.B. v. Don Burgess Constr. Corp., 596 F.2d 378, 384--386 (9th Cir. 1979), cert. denied, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979); Marina Mercy Hosp. v. Harris, supra; American Hosp. Mgmt. Corp. v. Harris, 638 F.2d 1208, 1211 (9th Cir. 1981). Therefore, there is some authority defining common ownership as requiring simultaneous significant ownership in two or more entities such that the subject owner has control over all entities.
¶16 Nevertheless, it would violate basic democratic principles for the Chief Law Officer of the State of Oklahoma to inform voters on the ballot that they were voting to preclude an ownership interest in different alcoholic beverage tiers and then have a new administration reverse this interpretation years after the election was completed. Therefore, this Administration feels compelled to adopt the interpretation presented to the people of Oklahoma on the ballot. The people of Oklahoma were informed that an ownership interest (which would include as little as one share of stock) in two or more alcoholic beverage tiers was precluded by the constitutional amendment. Accordingly, this Office concludes that the statutory provisions found in 37A O.S.2021, §§ 3-119, 3-120 and 3-121 permitting less than a 15% ownership of stock between the alcoholic beverage manufacturing, wholesaling, and retailing tiers clearly, palpably and plainly violate the prohibition on any common ownership between the alcoholic beverage manufacturing, wholesaling, and retailing tiers found in OKLA. CONST. art. 28A, § 2(A)(1).
¶17 It is, therefore, the official Opinion of the Attorney General that:

1. The statutory provisions found in 37A O.S.2021, §§ 3-119, 3-120 and 3-121 permitting up to 15% ownership of stock between the alcoholic beverage manufacturing, wholesaling, and retailing tiers clearly, palpably and plainly violate the prohibition on any common ownership between the alcoholic beverage manufacturing, wholesaling, and retailing tiers found in OKLA. CONST. art. 28A, § 2(A)(1). Therefore, 37A O.S.2021, §§ 3-119, 3-120 and 3-121 are unconstitutional to the extent they permit up to 15% ownership of stock in entities involved in different alcoholic beverage manufacturing, wholesaling, and retailing tiers from one another.[8]

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
GARRY M. GASKINS, II
SOLICITOR GENERAL
FOOTNOTES
[1] Search State Questions: 792, Okla. Sec'y of State, at *19, https://www.sos.ok.gov/documents/questions/792.pdf.
[2] As discussed below, there is a definition of common ownership in an unrelated Oklahoma statute found in Title 2 concerning agriculture. However, it is not dispositive to the issues presented in this Opinion.
[3] Black's Law Dictionary does not have a helpful definition for the term common as it defines the term as "[a] legal right to use another person's property, such as an easement." Common, Black's Law Dictionary (11th ed. 2019).
[4] Common, adj. (2--4), Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/common (last visited Mar. 14, 2023).
[5] Search State Questions: 792, Okla. Sec'y of State, at *19, https://www.sos.ok.gov/documents/questions/792.pdf. (Emphasis added).
[6] Member, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/member (last visited Mar. 14, 2023). The definition of "member" in Black's Law Dictionary is not helpful as it defines the term with respect to "parliamentary law." Member, Black's Law Dictionary (11th ed. 2019).
[7] There is no reason to believe a shareholder in a C corporation would be excluded from the commonly accepted and nontechnical meaning of member. Section 2385.29 of Oklahoma Statutes Title 68 concerns pass-through entities. The primary difference between a C corporation and a S corporation is that taxable income "is passed through to the S corporation's shareholders . . . ." Blitz U.S.A., Inc. v. Oklahoma Tax Comm'n, 2003 OK 50, n.2, 75 P.3d 883, 884 n.2, as corrected (May 22, 2003) (emphasis added). Therefore, the exclusion of a C corporation from the definition of member in 68 O.S.2021 § 2385.29 is solely the result of the disparate tax treatment.
[8] It has long been recognized that an Attorney General opinion finding an "act of the legislature is unconstitutional should be considered advisory only, and thus not binding until finally so determined by an action in the District Court of this state." State ex rel. York v. Turpen, 1984 OK 26, ¶ 12, 681 P.2d 763, 767. Accordingly, this opinion should be construed as advisory only.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1972 OK CR 37, 493 P.2d 829, 
SHATTUCK v. GRIDER
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2003 OK 50, 75 P.3d 883, 
BLITZ U.S.A., INC. v. OKLAHOMA TAX COMMISSION
Discussed

 
2014 OK 105, 345 P.3d 1113, 
FENT v. FALLIN
Discussed

 
2020 OK 5, 457 P.3d 1050, 
THE INSTITUTE FOR RESPONSIBLE ALCOHOL POLICY v. STATE ex rel. ALCOHOLIC BEVERAGE LAWS ENFORCEMENT COMM.
Discussed at Length

 
1984 OK 12, 679 P.2d 1296, 
Reherman v. Oklahoma Water Resources Bd.
Discussed

 
1984 OK 26, 681 P.2d 763, 55 OBJ 1013, 
State ex rel. York v. Turpen
Discussed

Title 2. Agriculture

 
Cite
Name
Level

 
2 O.S. 20-3, 
Definitions
Cited

Title 34. Initiative and Referendum

 
Cite
Name
Level

 
34 O.S. 9, 
Filing - Ballot Title - Review - Procedure
Cited

Title 68. Revenue and Taxation

 
Cite
Name
Level

 
68 O.S. 2385.29, 
Definitions
Discussed

Title 37A. Alcoholic Beverages

 
Cite
Name
Level

 
37A O.S. 3-119, 
Limitations on Rights and Interests in Package Store, Retail Wine, Retail Beer, Mixed Beverage, Beer and Wine, Public Event or Bottle Club Licensee or Caterer
Discussed at Length